## Amanda Beggs v. The First National Bank of Arcola.

1. CONSIDERATION—*what essential to forbearance as.* In order to constitute forbearance as a valid consideration, there must be an agreement to forbear or an extension of credit to the debtor.

2.  INSTRUCTION—*must not leave issue of law to jury.*  An instruction which permits the jury to determine what is or is not a pledge in law, is erroneous.

Assumpsit.  Appeal from the Circuit Court of Douglas county; the Hon. SOLON PHILBRICK, Judge, presiding.  Heard in this court at the November term, 1906.  Reversed and remanded.  Opinion filed June 1, 1907.

EDWARD. C. and JAMES W. CRAIG, JR., for appellant; JOHN H. CHADWICK, of counsel.

ECKHART & MOORE, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

The First National Bank of Arcola brought suit in the Circuit Court of Douglas county against Amanda Beggs to recover upon two promissory notes.  There was a verdict in favor of the bank in the sum of $4,536.52 upon which there was a judgment.  Beggs appealed.

Frank J. Beggs, a son of appellant, became indebted to appellee upon two promissory notes, both due on demand, one dated July 2, 1901, for $1,650, and the other dated May 28, 1902, for $2,800, upon which said notes the interest was paid up to June 30, 1906.  About the first of May, 1904, J. R. Beggs, who was president of the bank, and who was also a son of appellant, went to his mother's home, where it is claimed by appellee that said Amanda Beggs, who was the owner of thirty-three shares of the capital stock of the bank (having one certificate for twenty shares and one for thirteen shares), turned her certificates of stock over to said J. R. Beggs, as president of the bank, as collateral security to such unpaid and past due notes of Frank J.  These certificates of stock were taken by such president of the bank and retained by him, indorsed by the mother, until about the first of June, 1905, when J. R. Beggs returned or redelivered such certificates to appellant, whereupon she, either on the same day of the

redelivery of the certificates or very soon thereafter, signed said notes of Frank J. Beggs. Suit was commenced upon said notes against appellant on the thirteenth day of August, 1906, and judgment rendered as heretofore stated. The issue which the jury had to determine was whether or not there was any consideration for the signing of said notes by appellant.

Upon this subject, J. R. Beggs testified that in May, 1904, he saw his mother and told her that he, as president of the bank, would not transfer to her upon the books of the bank, the certificate for the thirteen shares of bank stock which had formerly been owned by Frank J., and by him assigned to appellant on September 1, 1902, until he (Frank) had paid the bank what he owed it; that at the time Frank turned over to her the thirteen shares of stock Frank's indebtedness to the bank was about $4,450; that the mother then said she would turn over to the bank her certificate for the thirteen shares and also the one for twenty shares as collateral to secure Frank's debt to the bank and then gave him the certificates which he held as such officer for the bank until about the first of June,1905. He further testified,that shortly prior to such last mentioned date he had received a letter from the comptroller of the currency to the effect that the bank could not hold its own stock as collateral security for a loan,whereupon he advised his mother of that fact; that very soon after telling her of the receipt of the comptroller's letter he saw appellant alone at her home; that he said to her that he brought the notes for her to sign and the stock to be returned; that he further said that he did not want to see her stock sold and that to sell it would hurt the credit of the bank, whereupon she replied that she supposed she would have to sign the notes; that she did sign them, and he thereupon redelivered to her the certificates of bank stock.

Appellant testified that her son, J. R. Beggs, who had the custody of her certificates for her, when he

first came to her, brought with him such certificates and wanted to know if she would not let the bank have the stock as collateral to Frank's notes; that she said she did not want to do it, but he insisted that they must have some collateral; that nothing was said about signing the notes and she did not think anything was said about J. R. Beggs not being willing to transfer the thirteen shares to her that Frank had so previously assigned; that J. R. Beggs said he did not see any other way out of it and insisted on her signing over the certificates and that she finally wrote her name upon the back of the certificates, and J. R. Beggs took them away with him; that Frank J. was present at the time of this conversation when she signed or indorsed the certificates and delivered them to J. R. Beggs.

Appellant further testified that prior to the date when she signed the notes, J. R. Beggs brought the certificates back and turned them over to her, saying at the time that the bank examiner had been there and had told him that he could not hold the certificates as collateral to the notes; that he wanted to know if she would sign the notes and that she replied that she did not know whether she would or not and that she did not sign them on that day and did not then agree to sign them; that on a subsequent date he came back and insisted upon her signing the notes and she did so. Appellant denied that she said to J. R. Beggs that she would sign the notes to keep the stock from being sold and testified that nothing was said to the effect that the bank stock would be sold if she did not sign the notes.

Frank J. Beggs testified that he was present when his brother, J. R. Beggs, brought to the mother the certificates of stock and delivered them to her; that J. R. then said that he could not hold them as collateral to the notes and that as he started to go away, appellant told him to take the certificates back and put them in the bank for her; that at the time nothing

was said about appellant signing the notes and that she did not then agree to so sign, and that he was not present upon the day when, in fact, his mother did sign.

This was, in substance, the evidence as disclosed by the record as to what passed between the parties pertaining to the subject-matter of consideration.

We are constrained to hold that there was no consideration for the delivery of the stock by appellant to the bank, nor any consideration for her signing the notes sued upon. Appellee argues in support of its theory, that there was an advantage to appellant in not having her stock sold under the National Bank Act; there was a redelivery to her of the certificates of stock, and that no suit was brought against said Frank J. Beggs and levy made upon the certificates, whereby appellant was enabled to retain the certificates in her own control. None of these claims, however, attains to the legal status of a consideration. The president of the bank could not rightfully have refused to transfer upon the books of the bank the shares of stock which had been duly assigned by Frank J. to his mother, and in case he did refuse, a remedy was at hand to compel a discharge of his duty in that regard. The stock was the stock of appellant and could have been reclaimed by her at any time, or an appropriate remedy maintained for its return. At no time was it subject to sale without her consent either under the law of the United States or of our own state.

At the time of the first conference between J. R. Beggs and his mother he had had the custody of the certificates for her for several months and brought them to her with the request that she would allow the bank to hold them as collateral to Frank's past due debts; she received nothing whatever for transferring such stock to appellee, neither did Frank J. receive any advantage or thing of value; nor did the bank part with anything of value or waive any right or

claim it then had, nor did it agree to postpone the enforcement of its claim against Frank J. Beggs. In fact, when the stock was first turned over by appellant there was no undertaking of any character entered into by appellee nor any right it then had released or impaired.

The fact that the bank did not sue Frank J. cannot, of itself, afford a consideration in the absence of a contract or agreement to forbear or postpone collection. In such cases there must be an agreement to forbear, or an extension of credit to the debtor. Vehon v. Vehon, 70 Ill. App. 40.

As the first delivery of the stock by appellant was of no force, it follows that a redelivery merely to appellant added nothing, as it was a turning back to her of her own property.

The verdict of the jury finding that there was a consideration for the signing of the notes involved by appellant was against the manifest weight of the evidence and should have been set aside.

There was error also in refusing to allow Frank J. Beggs to testify to what was said by J. R. Beggs and appellant at the time the certificates were first turned over by the mother to J. R. Beggs. There was a conflict in the testimony between J. R. Beggs and appellant as to what took place at that interview and the latter testified that Frank J. was present when the conversation took place. No good reason has been suggested why Frank J. Beggs was not as competent a witness to testify to the subject-matter of that interview as the two other witnesses who testified concerning it.

There was error also in the giving of the fifth instruction for appellee. That instruction, in substance, told the jury that if they believed from the evidence that appellant pledged the certificates of stock and delivered them to the bank to secure the notes of Frank J., then the bank had an interest in said shares and that, if appellant afterward signed the notes in

consideration of a redelivery to her of the said certificates, such redelivery would be a sufficient consideration for the signing of the notes by her.

This instruction made the jury the judges of the law in determining what was or was not a pledge. It also was misleading, as from it the jury could well have said, since the legal requisites of a pledge were not stated, that if the stock was delivered by appellant to the bank, even though without consideration, to secure the notes of Frank J., a redelivery thereof to appellant would be a consideration for the signing of the notes.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*