**Hale Scott, Trustee of Charles Brantner, Bankrupt, Appellant, v. Leaf River State Bank and S. E. Sprecher, Trustee, Appellees.**

### Gen. No. 7,650.

1. BANKRUPTCY—*sufficiency of evidence to show beneficiary of conveyance knowingly received preference from insolvent.* Evidence in a suit by a trustee in bankruptcy to cancel a trust deed and notes secured thereby, made by the bankrupt within four

months before he became insolvent, held to show that the bankrupt was insolvent at the time he made the conveyance, and that the beneficiary of the transaction had then reasonable cause to believe that the enforcement of the trust deed would enable it to receive a greater portion of the estate of the bankrupt than other creditors.

2. BANKRUPTCY—*when conveyance to creditor by bankrupt void as fraud upon other creditors.* Where a creditor procures his debtor to convey to him all of his property, under circumstances such as to charge the creditor with knowledge that by making such conveyance the debtor rendered himself hopelessly insolvent and unable to pay other creditors, the transaction is void as a fraud upon such other creditors without regard to the motives of the parties in making such conveyance.

3. CONTRACTS—*want of consideration for instruments in satisfaction of debt of another where debt neither released nor extended.* Where a trust deed and notes secured thereby were executed by the father of a debtor upon the demand of the son's creditors the transaction was void for want of consideration where it did not appear that the creditor, in consequence of the execution of such instruments, either extended the obligation of the debtor or released him therefrom.

Appeal by plaintiff from the Circuit Court of Ogle county; the Hon. HARRY EDWARDS, Judge, presiding. Heard in this court at the April term, 1926. Reversed and remanded with directions. Opinion filed October 6, 1926.

SEYSTER & FEARER, H. A. BROOKS and LEON A. ZICK, for appellant.

D. D. MADDEN, H. A. SMITH and WELSH & WELSH, for appellees.

MR. JUSTICE JETT delivered the opinion of the court. This is an appeal by Hale Scott, trustee in bankruptcy of Charles Brantner, bankrupt, appellant, from a decree entered by the circuit court of Ogle county dismissing his bill for want of equity in a suit instituted against the Leaf River State Bank, the Commercial State Bank of Forreston and S. E. Sprecher, trustee, to set aside and cancel and hold for naught a

trust deed and twenty-four promissory notes secured thereby and for other relief.

For the purposes of this opinion, appellant will be called complainant and appellees, defendants.

The record discloses that on the 24th day of September, 1924, Hale Scott, trustee of Charles Brantner, bankrupt, filed in the circuit court of Ogle county a bill against the Leaf River State Bank, the Commercial State Bank of Forreston and S. E. Sprecher, trustee, charging that on August 13, 1924, the said Charles Brantner was adjudged a voluntary bankrupt and that the said Hale Scott was appointed trustee and that he duly qualified as such and is the duly qualified and acting trustee in the estate of the said bankrupt.

It is further charged that at the time the said Charles Brantner was adjudged to be a bankrupt he was the owner of and seized in fee of 193 acres of land located in the Town of Lincoln in Ogle county, Illinois, and also all of a tract of land in the Town of Mount Morris in said county containing 84 1/5 acres, said land and premises being more fully described in the bill of complaint; that the land situated in the Town of Lincoln was mortgaged for $10,000 and the premises situated in the Town of Mount Morris were mortgaged for $7,200, and that the combined lands and premises, including both tracts in said two towns, were incumbered by a third mortgage to secure $5,520, and it is alleged that said three mortgages are liens on said real estate of the said Charles Brantner. The complainant also states in his said bill that on April 18, 1924, there was filed for record in the recorder's office of Ogle county, a trust deed executed by the said Charles Brantner and Della M. Brantner, his wife, to S. E. Sprecher, trustee, conveying the land in Lincoln township, consisting of 193 acres, and 80 acres of land in Mount Morris township in trust to secure the payment of twenty-four promissory notes dated April 17,

1924, due in one year, made by Charles Brantner payable to his order and indorsed by him, one for $4,740, one for $5,000, two for $1,650 each and twenty for $1,000 each; that at the time of making said trust deed, the said Charles Brantner made the notes described therein and that the Leaf River State Bank took $19,040 of the notes and the Commercial State Bank of Forreston took $14,000 of said notes.

It is further averred in said bill of complaint that on and before April 17, the said banks fraudulently and falsely represented to Floyd and Linus Brantner, the sons of Charles Brantner, and to Charles Brantner and his wife, that the sons were indebted to the said two banks in large sums and that in creating such indebtedness and dealings with the banks, the sons had committed a felony and that unless Charles Brantner would secure the indebtedness of the sons, they would prosecute them for such alleged felonies, and that Charles Brantner and his wife, believing such representations, were alarmed thereby and for the purpose of avoiding criminal prosecution of the sons for such alleged felonies executed such trust deed and notes and that they were executed without any valuable consideration and procured by fraud and misrepresentation and void and that the sons were not guilty of any felony as represented by the banks. In said bill of complaint, the complainant further charges that at the time of the execution of said trust deed, the said Charles Brantner was insolvent and had a large number of creditors in addition to those whose debts were secured by mortgages on said real estate and that the only property Brantner had at that time was his equity of redemption in said real estate, and that the trust deed to Sprecher was executed by Brantner and received by Sprecher and the banks with intent to defraud, hinder and delay Brantner's creditors and without any good and valuable consideration and that said Brantner was left without any property whereby

to satisfy his creditors and that said conveyance was fraudulent and void as to his creditors and made under such circumstances as to necessarily hinder, delay and defraud his creditors. It is further charged in said bill that said Brantner was not then indebted to either of said banks in any sum and that the said banks and said Sprecher had reasonable cause to believe that the enforcement of said trust deed would effect a preference in their favor over and above the other creditors of said Brantner and that, therefore, the trust deed was void and voidable as creating a preference and should be set aside.

It is also charged in said bill of complaint that at the time of the making of said trust deed, the said Charles Brantner was indebted to divers persons in sums in excess of $50,000 and that claims have been filed in said bankruptcy proceedings in excess of $17,-000. The bill then concludes by praying that the said trust deed and notes secured thereby be set aside and canceled and for general relief.

To said bill of complaint the said Commercial State Bank of Forreston, one of the defendants, filed a disclaimer and in this said disclaimer the said bank among other things said: "This defendant admits, as stated in the said bill of complaint that the said Charles Brantner made, indorsed and delivered twenty-four promissory notes as described in the said instrument of writing mentioned in the bill of complaint and then delivered the said notes to the amount of $14,000 to this defendant, the Commercial State Bank of Forreston, Ogle County, Illinois."

This defendant further answering says: "That on or about the 19th day of May, 1924, it delivered the said $14,000 of promissory notes described in the bill of complaint to the defendant, Leaf River State Bank, of Leaf River, Ogle County, Illinois, and received from said bank, a release and receipt for the same and that it fully and absolutely disclaims all

manner of right, title and interest whatsoever in and to the said $14,000 of promissory notes mentioned in said bill of complaint and in and to every part thereof," and then follows the usual conclusion of disclaimer.

The Leaf River State Bank and Sprecher, trustee, answered the bill and admitted that the complainant was the duly qualified trustee of Brantner, the bankrupt, and that he had been adjudged a bankrupt and that at the time of filing the petition in bankruptcy he was seized in fee of the lands as alleged and that the lands were incumbered by the mortgages as set forth in said bill of complaint and that on the 18th day of April, 1924, the said trust deed was filed for record and that the notes were given as therein charged and that all bore interest at the rate of 7 per cent and due one year after date, and they assert that the said trust deed is a valid and subsisting lien on said real estate and deny that any of the notes are held by the Commercial State Bank of Forreston and aver that they were all held by the Leaf River State Bank. Said defendants deny that they ever fraudulently and falsely represented that either of the sons of Charles Brantner had been guilty of a felony or that they would prosecute them and deny that this was a reason for giving the notes and trust deed and deny that the notes and trust deed were given without any consideration or that they were procured by fraud. The defendants aver that on April 17, 1924, Charles Brantner and Linus Brantner were indebted to the Leaf River State Bank in the sum of $4,618.76, and that Linus was then indebted to said bank in the sum of $28,300 on account of his overdrafts and had been due for some time, and that, in addition, he owed the bank $123 and that the total of said items owed to the Leaf River State Bank by Charles Brantner and his son, Linus Brantner, amounted to $33,941.76, and that the said Charles Brantner, a short time prior to April 17,

learned of this large indebtedness of his son Linus and voluntarily, without being requested to do so, offered to pay it and to secure it, and that it was then arranged that a conference should be held at the home of the said Charles Brantner on the 17th of April, 1924, to adjust and settle such debts and that it was then agreed that if the Leaf River State Bank would extend the payment of said debts, Charles Brantner would execute notes to the amount of $33,040 and deliver a trust deed on the lands to secure the same, subject to the prior incumbrances, and that the note for $4,740 was to cover the notes owed by Charles Brantner and Linus Brantner, jointly, and the note of Linus for $123, and the balance to cover the $28,300 debt owed by Linus and that the giving of said trust deed and notes extinguished the debts of Charles Brantner and Linus Brantner to the banks.

It is further stated in said answer that at the time of making said trust deed, the said banks regarded Charles Brantner as a man of considerable means, property and wealth and that he stated he was worth $40,000 over and above his debts and that none of the officers of the bank knew of the existence of any indebtedness of the said Charles Brantner except the three said mortgages and the said debts to the Leaf River State Bank and that they believed he was solvent. Said defendants deny that they had sufficient cause to believe or know that the making of a trust deed would operate as a preference above the other creditors of the said Charles Brantner, and deny that said trust deed is void and voidable as creating a preference. Said defendants further state in their answer that they had no knowledge of the other debts of the said Charles Brantner until after the filing of the petition in bankruptcy; that they had no knowledge of the amount of the indebtedness; that the payment by Charles Brantner of the debts of his son Linus was consented to by Linus.

Replication was filed to the answer and the cause referred to the master and the proofs were taken and reported and filed in court and a hearing was had upon the evidence so taken.

It is the contention of the complainant that the trust deed and notes in controversy should be set aside, vacated and canceled for the following reasons: (1) Because the trust deed was made without any present fair consideration as required by the Bankruptcy Act; (2) that said trust deed was made by the bankrupt and received by the bank under such circumstances that a court of equity will conclusively deem it to be fraudulent as to creditors; (3) that such transfer created a preference under the provisions of the bankrupt laws; (4) that it was given partly for an antecedent debt of the bankrupt and partly for an antecedent debt of the son, Linus Brantner, and the bankrupt received no benefit thereby and should be set aside as a preference.

It is the contention of the defendants (1) that the notes for $33,040 and the trust deed, securing the same, by Charles Brantner and wife, on April 17, 1924, did not constitute a preference under the provisions of the Bankruptcy Act; (2) that in the execution and delivery of the trust deed and notes there was no intent, either on the part of Charles Brantner, or on the part of the beneficiaries, under said trust deed, to disturb, delay, hinder or defraud creditors of Charles Brantner; (3) that the trust deed in question was not a voluntary conveyance. It was a transfer made for a good, valuable and legal consideration, and as a consequence was valid.

The evidence shows that in April, 1924, Charles Brantner resided on his farm of 193 acres in Lincoln township, Ogle county, with his wife and elder brother. His son Floyd lived in a separate residence on the same farm and his son Linus Brantner lived on a farm near the Village of Leaf River, about twelve

miles distant. The sons had been engaged in farming and buying and selling live stock for a number of years. Floyd Brantner did his banking business at the Commercial State Bank of Forreston, and Linus Brantner did his banking with the Leaf River State Bank. The evidence further establishes that the sons, Floyd and Linus Brantner, had for more than a year indulged in the practice of kiting checks between the two banks above mentioned, which practice was approved if not encouraged by the banks. It appears that Floyd Brantner would deliver his check on the Forreston Bank to Linus Brantner and Linus would deliver a check for the same amount on the Leaf River Bank to Floyd, and each would take his check and deposit it in the bank in which he did business which would give them and each of them a false credit, and a seeming balance until such checks passed through the clearing house and were returned.

For some months before April, 1924, the sons, Floyd and Linus, had been using checks of the denomination of $7,500 and when the account of one was exhausted or overdrawn, the bank would request him to bring a check from his brother, and they finally adopted the habit of exchanging a number of checks for $7,500 and leaving them with their respective banks when their accounts were overdrawn. The clearing house of Chicago detected what was going on and refused to clear, and both of the sons were found to have overdrawn their accounts. The Leaf River Bank insisted that Linus should make good his overdraft, and Charles Brantner, the father, testified that the cashier of the Leaf River Bank told him that the sons had been guilty of an offense, by the kiting of checks, and that he became alarmed at the suggestion of his sons being guilty of a violation of the law.

The record discloses that Roy S. Mize was the cashier of the Leaf River State Bank and George C. Snyder was the cashier of the bank at Forreston.

After the clearing house had refused to clear the checks, and prior to the 17th day of April, 1924, Mize suggested to Linus Brantner and his father, Charles Brantner, to go to other banks and borrow money to pay the debt at his bank, and they did finally get a man by the name of Paul to sign a note to the Leaf River Bank for $4,500, which was the only sum they were able to raise. It appears that the officers of the Leaf River Bank and Snyder of the Forreston Bank arranged to meet at Charles Brantner's home on the evening of April 17, 1924. Brantner testified he was not informed of their coming and knew nothing about it until about seven o'clock in the evening, when Snyder and the officers of the Leaf River State Bank arrived at his home. The son, Floyd Brantner, was called in and it appears that they remained at Brantner's home until about ten o'clock in the evening. On this evening in question, Charles Brantner and his wife executed notes to the amount of $33,040, and a trust deed to secure the same, to S. E. Sprecher, trustee, who was one of the directors of the Leaf River Bank, conveying the two farms owned by Charles Brantner, which was all the land and property owned by the said Brantner and his wife. The debt was evidenced by twenty-four promissory notes, due in one year with interest at 7 per cent, signed by Charles Brantner and his wife, payable to the order of Charles Brantner and indorsed by him. The said notes were for the amounts as hereinbefore stated and as charged in the bill of complaint. The land was then incumbered by three mortgages, one on the Lincoln farm for $10,000, dated November 3, 1923, one for $7,200 on the Mount Morris land, dated August 21, 1923, and one for $5,520 covering both tracts of land, dated April 15, 1924, and the trust deed to Sprecher was expressly made subject to these incumbrances. It is the contention of the complainant that the notes and trust deed were made in accordance with the wishes

and proposals of the officers of the Leaf River State Bank, and that the papers were executed as proposed, and drawn by the officers of said bank.

One of the reasons assigned by the complainant in support of his contention for a reversal of the decree is that the making of the trust deed and notes in question created a preference. In order to show that the execution of the trust deed created a preference it is necessary to prove that at the time the trust deed was executed the bankrupt was insolvent; that it was made within four months before bankruptcy; that the enforcement of it, that is of the trust deed, would enable the Leaf River State Bank, one of the defendants, to obtain a greater percentage of its debts than the other creditors, and that at the time of the transfer, or the recording of said trust deed, the bank had reasonable cause to believe that such a transfer would give it a preference. That Charles Brantner became a bankrupt within four months after the execution of the notes and trust deed in question is not controverted. That the said Charles Brantner by reason of the execution of the notes and trust deed became insolvent we think is clearly established by the evidence. The only property Charles Brantner had before the execution of the notes and trust deed was his equity in the lands conveyed and they were then subject to three mortgages aggregating, exclusive of interest, $22,720, which added to the amount secured by the trust deed made a total indebtedness of $55,760, exclusive of interest. The testimony also shows that Brantner, the bankrupt, had signed notes with his son Floyd which were existing indebtedness at the time of the execution of the trust deed in the aggregate of more than $20,000, and that he had signed notes with his son Linus which were also existing indebtedness at the time of the execution of the trust deed to the amount of $4,740, which is a part of the said indebtedness secured by the trust deed. The testimony further shows

that the bankrupt also had signed obligations in which neither of his sons was a principal to the amount of $5,500. When we take into consideration the value of the equity of the bankrupt in the premises conveyed, together with the amount of indebtedness of the said bankrupt, he was insolvent by many thousands of dollars at the time of the execution of the trust deed and notes in question. The testimony also shows, in our opinion, that the defendant bank had reasonable cause to believe the enforcement of the trust deed would result in a preference, that is to say, would result in its receiving a greater proportion of the estate of the bankrupt than other creditors. The evidence further shows that the banks just prior to the time of the making of the trust deed suggested to the bankrupt to borrow money from other banks and that he told the officers of the banks that he had already borrowed to his limit. In support of this contention Charles Brantner among other things testified:

"I don't remember whether there was anything said that night about what I owed. There had been before that time at the Leaf River Bank. Mize was there and Floyd and I, and he asked me whether I could not get the money to clean this up at different banks. I told him that I had borrowed all the money they would lend. Nothing was said on the subject that night. They asked about my debts and the mortgage that was on the land. Am not sure just now whether there was anything said that night. At the Forreston Bank they wanted us to borrow money at this bank and that, different banks. We told them we had borrowed all we could at the banks. Mr. Snyder was there then and Floyd was with me. I cannot give you the dates of these conversations. It was from the fore part of April up to that time. They were crowding us for the money right along. I told them how much I had borrowed and gave them the correct amount: $5,520.00 from the Forreston State Bank, * * * $2,000.00

from the Oregon State Savings Bank. There was something said to both of these banks about sale notes in these conversations that I signed with both the boys' sale notes. They knew that."

On the same subject Floyd Brantner testified:

"When father and I went to the Forreston Bank, Mr. Snyder wanted to know if we couldn't borrow some money from other banks and he mentioned some other banks. Father said we had sale notes at the Polo Bank and he said we had $2,500.00 borrowed from the Exchange Bank. He said he didn't think we could get any more there. We said we would try to get it if we could, and we had a conversation with the officers of the Leaf River Bank concerning the same subject, and told them the same thing. That was in the fore part of April, along the 8th or the 10th, something like that."

The testimony of Linus Brantner was as follows:

"Shortly before the settlement, father and he and I were in the basement of the Bank. Mize wanted us to go down there so no one would hear what we said. The main topic there was where to get the money to settle it. Mr. Mize wanted me to borrow more money with my father as security. He mentioned Charles Riley and Mr. Cooper. Mize suggested that I was to try to get them to go on my notes and get the money at the Byron Bank, and I said there were too many notes with father's name on as security already. The banks wouldn't take any more."

The testimony of Charles Brantner and his two sons is, so far as this record discloses, not contradicted and establishes the fact that Mize and Snyder, cashiers of the respective banks, prior to the time of the execution of the trust deed and notes, knew that Charles Brantner had by borrowing money exhausted his credit and had no credit at other banks and had signed sale notes with his sons to such an extent that he was unable to raise any more money.

Collier on Bankruptcy (1925 Ed.), p. 1299, announces the following rule:

"Reasonable cause to believe that a transfer will effect a preference does not require proof, either of actual knowledge or actual belief, but only such surrounding circumstances as would lead an ordinarily prudent business man to conclude that the transfer will result in a preference. Notice of facts which will incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop. If a creditor accepts a transfer under circumstances which would lead a man of ordinary prudence and sagacity to believe he was being preferred over other creditors of the same class, without making investigation, he would be charged with the knowledge which he would have acquired had he performed his duty in this regard. It is to be remembered, however, that the same circumstances which to some minds would merely give grounds of suspicion may afford evidence which to other minds would carry conviction that they not only showed reasonable cause to believe, but actually had created a belief. Where the duty of inquiry as to a debtor's solvency is imposed on a creditor, it is not met by inquiry alone of the debtor, whose answer, in the circumstances in the case, could readily be found to have been untrue."

Black on Bankruptcy, ¶ 599, states the rule as follows:

"When a creditor about to receive payment on security from his debtor has knowledge or notice of facts which would incite a man of ordinary prudence and business intelligence to inquire as to debtor's solvency and the probable effect of the transaction as a preference, he is bound to prosecute a reasonably diligent inquiry to ascertain the truth, and, if he fails to do so, he is chargeable with knowledge of the facts which such an inquiry would have disclosed; and if

such ultimate knowledge would have given him a reasonable cause to believe that the transaction would result in giving him a preference, then he cannot safely accept the payment or transfer and the transaction will be voidable if the creditor becomes a bankrupt in four months."

When the circumstances are such as to incite a man of ordinary prudence to inquire, the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed; inquiry of the debtor alone is not sufficient. *Schulette & Co. v. Schwank*, 45 Amer. Bankr. Rep. 373.

The defendants insist that the conveyance cannot be set aside as a preference as to the indebtedness of the bankrupt's sons secured by the trust deed, because this was not a pre-existing indebtedness of Charles Brantner.

The Bankrupt Act as amended in 1910 reads as follows: "If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

When a debt is contracted a creditor is necessarily created and the Bankruptcy Act does not provide that such creditor must be a pre-existing creditor.

Scott v. Leaf River State Bank, 242 Ill. App. 268.

It has been held that all transfers coming within the provisions of the act are not preferences, but only such as diminish the estate; that a transfer of property of no or little value will not be set aside, nor will transfer of exempt property, because creditors would have no rights in such property.

"As a corollary to the proposition that only transfers which diminish the estate of the bankrupt are preferences, it may be stated that preferences arise only in the case of antecedent debts." Collier on Bankruptcy, 803.

The debts secured by the trust deed were antecedent debts but were largely the antecedent debts of the son of the bankrupt. The defendants assert that if the bank had taken a trust deed to secure the bankrupt's debt that it might be set aside, but if it took it to secure the debt of his son the trust deed could not be set aside even though it entirely impoverished the bankrupt's estate. To our minds such contention is not equitable, and does not find support in the Bankruptcy Act.

There is nothing in this record to indicate that the said bankers were less astute than the ordinary business man. They were possessed of the information prior to the time of the execution of the notes and trust deed that Charles Brantner was greatly in debt. They were informed that he had borrowed all the money he was able to get at other banks. It had been suggested by them that he borrow from other banks and pay the indebtedness of the banks that were instrumental in securing the execution of the notes and trust deed. They were appraised of his financial condition and in view of the rule hereinbefore announced they are charged with knowledge that the transaction would result in giving them a preference. We are of the opinion that the defendants not only had reasonable cause to believe that the enforcement of the trust deed would effect a preference, but that they had

actual knowledge of the fact that its enforcement would create a preference.

It is also contended by the complainant that the trust deed was fraudulent and void as to the creditors of the bankrupt and therefore should be set aside at the instance of his trustee. The defendants quote paragraph 4 of chapter 59 of Cahill's Revised Statutes in reference to fraudulent conveyances and say that such conveyances in order to be fraudulent must be "made with the intent to disturb, delay, hinder and defraud creditors or other persons," and insist that this was not the intent in the present case.

It has been held that it is not necessary to make actual proof of such fraudulent intent and that there are two separate and distinct grounds under which such conveyances may be set aside: First, such as are entered into with a fraudulent intent; and second, such as from the nature of the transaction itself are deemed fraudulent as a mere inference of law without regard to the motives or actual intention of the contracting parties. *Lawson v. Funk*, 108 Ill. 502; *Nelson & Co. v. Leiter*, 190 Ill. 414; *Haas v. Sternbach*, 156 Ill. 44; R. C. L., vol. 12, p. 537.

The Bankrupt Law applicable in this cause is different from the statute relied upon by the defendants. The Bankrupt Act provides: "That all such conveyances, transfers, assignments or encumbrances of his (the bankrupt's) property or any part thereof, made or given by a person adjudged a bankrupt, under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition with the intent and purpose on his part to hinder, delay and defraud his creditors or any of them, shall be null and void as against creditors of such debtor, except as to purchasers in good faith and for a present fair consideration." It will be seen that under the bankruptcy statute there must have been a "present fair consideration" to sustain a convey-

ance. It follows that Charles Brantner, the bankrupt, knew at the time of the making of the trust deed and notes that in addition to the three mortgages then on his land aggregating $22,720 he was indebted to divers persons, without counting the indebtedness secured by the trust deed in question, in the sum of more than $30,000, and that when he made the trust deed to secure the $33,040 his total indebtedness exceeded $80,000, and that all of the property he had of every kind was not worth within $25,000 or $30,000 of that amount. In other words, he knew that by the making of the trust deed and the notes in question he rendered himself hopelessly insolvent.

In Collier on Bankruptcy (9th Ed.), p. 956, it is said:

"f. Purchasers in good faith and for present fair consideration.—This saves valid transfers, as subsection d does valid liens. A purchaser is not in good faith who makes no effort to determine whether an insolvent may make a transfer which will not be in violation of the act; nor is he in good faith if he has knowledge of the insolvent's insolvency, or where facts are shown which place upon the purchaser the duty of making inquiries as to the insolvent's financial condition, and he fails to make them, as where the sale consists of the transfer of the entire stock of merchandise owned by a retail merchant. A payment of a note dated prior to the four months' period, which is immediately followed by bankruptcy, is not in good faith and for a present fair consideration. The fact that a mortgagee knew that the proceeds of a mortgage was to be used in the payment of the mortgagor's creditors does not affect the good faith of the transaction, in the absence of proof that he had cause to believe that the mortgagor was insolvent. If the consideration is fair and passes to the bankrupt and goes into his estate, the transfer is valid, unless there is clear and convincing proof of fraud."

No other conclusion can be reached but that the parties to this trust deed knew or had reason to believe that the execution of the notes and trust deed made the bankrupt insolvent and was therefore a fraud upon his unsecured creditors.

We cannot give weight to the contention of the defendants that the bank had no knowledge or reason to believe that it was getting a preference over other creditors in this transfer or that it would work a fraud on other creditors. In passing upon this branch of the case it is necessary to keep in mind that Mize and Snyder, cashiers of the respective banks, went to the bankrupt's home on the evening of the 17th of April and obtained the trust deed; that a few days before they had urged the bankrupt to go to other banks to borrow money to pay them and they were told in substance that he had already signed sale notes and borrowed money from the banks to his limit. They knew that when they went to the home of Brantner that he had borrowed from other banks all that he could; they knew the extent of the holdings of Charles Brantner; they knew of his indebtedness, including his indebtedness to them, and in view of what the record discloses they knew of the financial condition of Charles Brantner, and in possession of this information they secured the trust deed and by so doing made Brantner a bankrupt and absolutely insolvent.

All that the complainant was required to show was that when the defendants received the trust deed they had knowledge and notice of the facts which would incite a man of ordinary and business intelligence to inquire as to the debtor's insolvency and the probable effect of the transaction as a preference and if they had that knowledge and they failed to make an inquiry, they are chargeable with knowledge of the fact which such inquiry would have disclosed.

It seems to us that when a debtor parts with all of his property and under such circumstances as is dis-

closed in this record, whereby it is inevitable that he will prevent his unsecured creditors from getting anything, that the courts will say as an inference of law, without regard to the motives or intentions of the bankrupt, that the transaction is fraudulent. We are of the opinion that the transaction in question was fraudulent and void without regard to the motives or actual intent of the contracting parties.

At the expense of extending this opinion we desire to further allude to the question of consideration. As we understand the contention of the defendants they do not claim that the bankrupt got any benefit or consideration for the conveyance but do insist that it either extended the time of payment of the debt or released Linus Brantner from the debt or both, and that therefore in law that is sufficient consideration to sustain it, or, in other words, what took place constituted a present fair consideration. The evidence does not show that Linus Brantner was released from the obligation of his indebtedness or that his indebtedness was extended as to him, but it does establish that it was the understanding that he was not to be released from the indebtedness and that it was not extended as to him. We fail to find in the record any agreement to extend any of the obligations. Linus Brantner, who owed them, was not at the meeting and knew nothing of the meeting for several days afterwards. There was no request from the son, Linus Brantner, that his indebtedness be extended and he testified that after the trust deed was made he paid to the bank to apply on his debt about $900. Furthermore, the witness Mize, cashier of the defendant bank, testified that on April 17, in a talk with Charles Brantner, before going to the home of Brantner, he asked how he was going to take care of this debt and he said the boys should take care of all they could and if they did not or could not take care of it all he would take care of the balance. In other words, it was still

the debt of Linus and he was not released from the obligation and Charles was to pay what Linus failed to pay. . The evidence does not show that Linus Brantner knew that it was intended his father should mortgage his property or that the trust deed had been executed until several days afterwards. The evidence does show that a number of days after the execution of the trust deed Mize, representing the Leaf River State Bank, and Snyder, cashier of the Forreston Bank, went to Linus and wanted him to meet them in Rockford and turn over his property by a bill of sale against his overdrafts. Linus wanted to give a chattel mortgage but after he learned of the trust deed he refused to do it. The evidence also shows that on May 7, following the giving of the trust deed, the Leaf River State Bank wrote to Linus requesting payment of a part of his indebtedness covered by the trust deed. The bank never surrendered the notes as subsisting valid obligations against Linus until the close of the hearing in the case. The defendants insist that Linus Brantner ratified the alleged extension because he refused to make a bill of sale or mortgage his personal property after he learned of the execution of the trust deed. We fail to see how the refusal of Linus Brantner to execute a mortgage or make a bill of sale could amount to a ratification as is insisted by the defendants. If it was not agreed that Linus Brantner was to be released, or the debt was to be extended as to him, there was nothing to ratify. Moreover, where a debt is incurred and after the incurring of the same a third party promises to pay or guarantee it, some additional consideration is necessary to support such promise. *Anderson v. Norvill*, 10 Ill. App. 240; *Cassell v. Morrison*, 8 Ill. App. 175; *Haven v. Chicago Sash, Door & Blind Co.*, 96 Ill. App. 92-101.

In *Edgerton v. Weaver*, 105 Ill. 43, and *Hahn v. Maxwell*, 33 Ill. App. 261, it is held that when one person promises to pay the debt of another without any

understanding · or agreement for forbearance by the creditor, against the original debtor, there is no consideration for the agreement.

We have examined the authorities cited by the complainant and the defendants upon the various questions raised and discussed. We do not feel like extending this opinion in reviewing the cases.

Regardless of all other questions presented and argued, we are of the opinion that the decree should be reversed and the cause remanded with directions to the circuit court of Ogle county, because the making of the trust deed and notes in question created a preference under the Bankrupt Law, and the said conveyance was fraudulent as to the unsecured creditors of the bankrupt, which is accordingly done and the court is directed to vacate the decree, dismissing the bill, and to enter one granting the relief prayed by the complainant in his bill of complaint.

*Reversed and remanded with directions.*