Frederick A. Turner and Henry P. Heizer, Appellants, v. Agnes Porter, Appellee.

Gen. No. 35,387.

16

Opin-
ion filed December 28, 1931.

AMOS W. MARSTON, for appellants.

SLOTTOW & LEVITON, for appellee; CHARLES LEVITON, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the complainants seek to reverse a decree of the circuit court of Cook county, by which their bill to foreclose a mortgage executed by the defendant was dismissed for want of equity, and it was further decreed that the mortgage be removed as a cloud on defendant's property.

The record discloses that Fred L. White was a real estate broker and in September, 1925, sold a piece of real estate belonging to complainant Turner to Margaret A. Leck. Under the terms of the written contract entered into between the parties, $4,000 earnest money was paid to White. The deal was consummated and afterwards, November 19, 1925, White sent his check for $2,956.97 to Turner, being the amount remaining of the $4,000 in White's hands. The check was returned to Turner by the bank because White did not have sufficient funds to meet it. When the check was not paid,

Turner, through his counsel, brought pressure to bear on White to secure the payment of the amount due. White sought assistance from Bessie M. Gannon, a woman about 58 years of age, with whose relatives he, as a real estate broker, had had two real estate transactions about six years before the time in question. She was unable to assist him but induced her friend, the defendant Agnes Porter, who was unacquainted with White and had had no business transactions with him, to come to White's assistance. Miss Porter was about 58 years of age and unfamiliar with business transactions. White induced her to execute her note dated November 27, 1925, for $3,000, and a trust deed conveying a piece of property owned by her to complainant Turner as security for White's indebtedness. She received no consideration from anyone in the matter. The note was payable six months after date and as no part of it was paid, complainants filed their bill in the instant case to foreclose the trust deed. The defendant filed her answer and the cause was referred to a master to take the evidence and make up his report. After most of the evidence was in, the defendant amended her answer and filed her cross-bill praying that the mortgage be removed as a cloud on her property. The master recommended a decree of foreclosure in accordance with the prayer of the bill, and that the defendant's cross-bill be dismissed. The chancellor sustained exceptions to the report and a decree was entered dismissing complainants' bill and awarding the defendant relief under her cross-bill, and the complainants appeal.

In addition to what we have heretofore stated, the evidence was to the effect that two or three days before the note and trust deed were executed by defendant, White was introduced to her by Miss Gannon. He was seeking assistance on account of his failure to pay Turner the money deposited with him, as above stated. Miss Porter was induced to deliver to White her cer-

tificate of registration showing the title to her lot under the Torrens Act. White took the certificate to counsel for Turner and the two men then went to look over the property. It was apparently arranged by the counsel and White that on that evening White would take the two women to counsel's home to execute the note and trust deed which counsel was to prepare. This was done and White and the two women went to counsel's home where the note and trust deed were executed by defendant. It further appears from the evidence that a few days before this, counsel for Turner had gone to the municipal court at Grand Crossing, Chicago, and Turner swore to a complaint charging White with a crime on account of his failure to pay Turner the amount deposited with White. The nature of the charge made in the complaint is uncertain.

On the hearing before the master, Turner's counsel, who had prepared the note and trust deed, testified that the charge made was a felony, but he later testified that it was a misdemeanor; that the complaint had never been filed in court but was retained by him. It was not produced on the hearing, but in the view we take of the case, we think it immaterial whether the offense alleged was a felony or a misdemeanor. The evidence is further to the effect that at the time of the execution of the trust deed and note White had not been advised that the complaint had been sworn to by Turner. Nor did either of the women know of this fact. There is evidence that at the time of the execution of the note and trust deed counsel for Turner stated to the parties present at his home, that White had given a check to Turner which had been returned by the bank unpaid because of insufficient funds.

It further appears from the evidence that some time thereafter White disappeared and a number of criminal complaints were lodged against him by other par-

ties on account of White's shortages growing out of real estate transactions. Four witnesses testified— Turner's counsel, former Judge Sheridan E. Fry, Turner, the complainant, and the two women, Miss Porter and her friend, Miss Gannon. All of the evidence shows that neither of the women had ever heard of Mr. Turner and that he had not heard of them until after the execution of the note and trust deed. Judge Fry's testimony is to the effect that just before Miss Porter executed the note and trust deed the matter was explained by him to Miss Porter and that she understood what she was about to do. The testimony of Miss Porter and Miss Gannon is somewhat incoherent but is to the effect that Miss Porter thought she was putting up her deed or title to her property to help White; that White was to later bring in some notes to Judge Fry, who was to collect them and thereby satisfy White's indebtedness to Turner. Miss Porter was a housekeeper and was working for wages for a family in Chicago. Miss Gannon was also working as a housekeeper nearby the place where Miss Porter was employed. They had been friends for a number of years. At one time Miss Porter had assisted Miss Gannon at a bank where the latter owed some money, apparently pledging Miss Porter's property as security.

The evidence we think further discloses the fact that Miss Porter did not know White and knew nothing about his business affairs except that he needed some financial assistance, she having been introduced to him only a day or two before she executed the trust deed and note. Concerning what took place at Judge Fry's house, at the time the trust deed was executed, Miss Porter testified that she asked Judge Fry "for security for my deed"; that she didn't know at the time White had given the check which had been returned on account of insufficient funds; that she wanted a receipt for her deed, which she thought Judge Fry was to keep

in his desk; that she understood White and Judge Fry were very good friends, and that "At the time I thought it was a collateral deed that Judge Fry was taking up himself to hold my title to get some money out for this Fred White."

The chancellor found in the decree that the defendant Porter did not owe anyone connected with the transaction any money, that there was no consideration for the mortgage, and it was decreed that the bill be dismissed for want of equity and a decree entered in Porter's favor on her cross-bill, removing the mortgage as a cloud on her property.

We are of the opinion that there was no consideration to support the note and trust deed. There was none passing to Miss Porter and none passing between White and Turner; and in these circumstances the trust deed cannot be enforced. *Scott v. Leaf River State Bank,* 242 Ill. App. 268; *Edgerton v. Weaver,* 105 Ill. 43; *Beggs v. First Nat. Bank of Arcola,* 134 Ill. App. 403; 19 R. C. L. par. 67, p. 293; 41 Corpus Juris, sec. 202, par. 4, p. 386; *Bryson v. Day* (Ore.), 178 Pac. 184; *Bynum Mercantile Co. v. First Nat. Bank of Anniston,* 187 Ala. 281.

In the *Scott* case, where a note and trust deed were executed by the father to the creditors of his son, it was held that the transaction was void for want of consideration where it did not appear that the creditor, in consequence of the execution of the note and trust deed, either extended the obligation of the debtor or released him from the debt. The court there said (p. 288): "If it was not agreed that Linus Brantner was to be released, or the debt was to be extended as to him, there was nothing to ratify. Moreover, where a debt is incurred and after the incurring of the same a third party promises to pay or guarantee it, some additional consideration is necessary to support such promise. (Citing cases.) . . . In *Edgerton v. Weaver,* 105 Ill. 43, and *Hahn v. Maxwell,* 33 Ill. App. 261, it is held that

when one person promises to pay the debt of another without any understanding or agreement for forbearance by the creditor, against the original debtor, there is no consideration for the agreement.''

And in the *Edgerton* case (105 Ill. 43), it was held that where forbearance was relied upon as the consideration of a promise, the evidence must show more than that it was followed by forbearance; that it must appear not·only that the promise was made for the purpose of obtaining time, and that time was actually given, but also that the indulgence was accorded pursuant to a request. The court, speaking by Mr. Justice Scholfield said (p. 46): ''A promise to pay the debt of another, it has been held, cannot be rendered binding by proof that it was followed by forbearance, unless there be something to show, not only that it was made for the purpose of obtaining time, and that time was actually given, but that the indulgence thus accorded was in pursuance of the request implied by the promise.''

In the *Beggs* case (134 Ill. App. 403) Mrs. Beggs, the mother of Frank Beggs, who was indebted to a bank, turned over to the bank certain certificates of stock as collateral security for her son's past due notes. Afterwards the certificates were returned to the mother and she then signed her son's notes. She was sued upon the notes; it was held that there was no consideration and the judgment against her was reversed. The court there said (pp. 407, 408): ''She (the mother) received nothing whatever for transferring such stock to appellee, neither did Frank receive any advantage or thing of value; nor did the bank part with anything of value or waive any right or claim it then had, nor did it agree to postpone the enforcement of its claim against Frank Beggs. In fact, when the stock was first turned over by appellant (the mother) there was no undertaking of any character entered into by appellee nor any right it then had released or impaired. The fact

that the bank did not sue Frank cannot of itself afford a consideration in the absence of a contract or agreement to forbear or postpone collection. In such cases there must be an agreement to forbear, or an extension of credit to the debtor. *Vehon v. Vehon,* 70 Ill. App. 40.''

In 19 R. C. L., par. 67, it is said: ''One who has executed a mortgage to secure the precedent debt of another may show that there was no consideration therefor and in that manner avoid the mortgage.'' And in 41 Corpus Juris, sec. 202, par. 4, p. 386, in announcing the law of consideration of mortgages it is said that a pre-existing debt is a sufficient consideration to support a mortgage given as security for the debt; and that there need be no new consideration at the time of the making of the mortgage; and ''Where, however, the mortgagor is a stranger to the debt and there is no other consideration, the mortgage cannot be sustained'' citing the *Bynum Mercantile* case, *supra* (187 Ala. 281) in which case, after a note was made and delivered, collateral security was given the owner of the note. The court there said (pp. 283–284): ''It is well settled by the authorities that a mortgage or pledge given as security for the pre-existing debt of the mortgagor or pledgor is valid and binding upon that consideration alone, and requires no new or additional consideration to support it. . . . It is equally well settled that such a mortgage or pledge by a stranger to the original obligation given upon that consideration alone is not binding for want of a valid consideration.''

In the instant case, we think the evidence shows that there was no consideration for the note and trust deed in question. At the time they were executed by defendant Porter nothing was said that the time of payment of the debt from White to Turner would be extended. It is true that Judge Fry testified that at that time he said White's indebtedness was canceled by the execution of the note, but he further testified, at least

five times, that the note and trust deed were given as security for White's indebtedness, and in the bill filed by complainant it was alleged that "Agnes Porter . . . on consideration of an indebtedness to your orator, Frederick A. Turner, of the sum of $3,000, in security and as evidence thereof," made and delivered her promissory note. At the time the note and trust deed were executed, counsel for plaintiff had in his possession the check which had been issued by White and which was returned on account of insufficient funds. No release of the indebtedness was given to White by Turner. We think it was understood by the complainant that the note and trust deed were given as security and not in payment of White's indebtedness to Turner. And as stated in the *Beggs* case, *supra,* "In fact, when the stock was first turned over by appellant there was no undertaking of any character entered into by appellee nor any right it then had released or impaired." In the instant case we think there was no understanding by the parties that White's debt was paid by the delivery of the note and trust deed.

The decree of the circuit court of Cook county is affirmed.

*Affirmed.*

McSurely and Matchett, JJ., concur.