JUDITH VERSON, Plaintiff and Counterdefendant-Appellee, v. MAURICE STEIMBERG *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (6th Division)   No. 1—88—1356

Opinion filed November 17, 1989.—Rehearing denied January 10, 1990.

Chadwell & Kayser, Ltd., of Chicago (Paul W. Gabler and Stephen N. Landsman, of counsel), for appellants.

852

Rosenberg, Opdycke, Gildea, Hellner & Kelly, of Chicago (Mark Hellner, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff filed suit to quiet title on her home, naming as defendants Maurice Steimberg, Harold Marcus and Annabelle Marcus, who held a trust deed encumbering the property. The defendants filed a counterclaim to foreclose on the trust deed. Following trial the court held in favor of plaintiff, found that she had received no consideration for executing the trust deed and found defendants were not entitled to the foreclosure sought in the counterclaim.

Defendants filed this appeal and raise these issues: (1) whether plaintiff in fact did receive consideration for the trust deed so that defendants are entitled to foreclose the mortgage lien against the property, and (2) regardless of whether or not plaintiff received consideration, were defendants entitled to foreclose the trust deed against the undivided one-half interest in the property owned by plaintiff's husband at the time the trust deed was executed and delivered? Plaintiff adds the issue of whether plaintiff proved the affirmative defense of *laches* and therefore whether the foreclosure action was barred by *laches*.

Plaintiff and Stuart Banks were married in 1965 and purchased the residence in Homewood, Illinois, in 1969, subject to a purchase money mortgage to St. Paul Federal Savings & Loan Association. In 1976, their marriage was failing and plaintiff and Banks separated. Plaintiff remained in the family home with their children and continued to make the mortgage payments to St. Paul Federal Savings & Loan while Banks moved to another residence. Plaintiff and Banks were divorced in 1982. As part of the property settlement, Banks quitclaimed the house to plaintiff.

For some time prior to their marriage, Banks worked for H & M Truck and Auto Parts (Truck) and H & M Auto Electric (Electric). These businesses were owned by defendants. In 1977, Banks and Fred Goldstein, who was the son-in-law of the defendants, agreed to buy the stock of the two businesses and defendants agreed to sell them. At that time Banks and Goldstein also were the only shareholders of Stugo, Inc., an Illinois corporation. Stugo, Inc., also was named as a purchaser in the agreement. A written agreement was executed on or about July 8, 1977, by Banks, Goldstein and Stugo, Inc., and provided in pertinent part: (1) that in consideration of the sale of the stock, purchasers were to execute four promissory notes payable to the defendants, all for a total principal value of $1,467,472.49; (2) that

purchasers Banks and Goldstein were to personally guarantee payment of the four notes; and (3) that as additional security for the promissory notes, Banks agreed that he and his wife, plaintiff, would execute a second mortgage on their residence in Flossmoor and Goldstein agreed that he and his wife would execute a second mortgage on their home in Des Plaines. The closing took place on December 31, 1977.

On December 29, 1977, Banks and plaintiff jointly executed a trust deed dated December 31, 1977, on their home to the defendants, which deed was delivered to defendants at closing and subsequently recorded. The trust deed recites consideration of $1 and "to secure payment of the principal amount plus interest" of the four promissory notes given by Stugo, Inc., Banks and Goldstein for the purchase price of the businesses. The trust deed "conveyed and warranted" all their interest in the property and was subject to the St. Paul mortgage.

At the time the trust deed was executed by Banks and plaintiff, they were living separate and apart from each other. Subsequently, in late 1982, Banks and plaintiff were divorced, and as part of the property settlement on October 20, 1982, Banks executed a quitclaim deed for the Flossmoor property to plaintiff and she assumed responsibility for payment of the first mortgage. The quitclaim deed to plaintiff was made subject to the trust deed recorded January 10, 1978, to secure notes for $1,467,472.49 and was also subject to the purchase money mortgage recorded August 28, 1969, to secure a note for $25,000.

The record discloses that at the time Banks and Goldstein entered into the agreement to purchase the businesses from the defendants, plaintiff and Banks were separated from each other. Plaintiff testified that because title to their home was in joint tenancy, Banks assured her that her signature on the trust deed required by the defendants was just a formality.

Within two years of closing on the purchase of the businesses, Banks, Goldstein and Stugo, Inc., defaulted on their obligations on all of the promissory notes. Exchange National Bank held a first lien against all assets of the companies and moved to foreclose on the lien on all assets of the businesses, subsequently selling the assets to one Bernie Hirsch. Exchange National Bank took no action against plaintiff since she had not participated in the negotiations for agreement to purchase the businesses nor had she agreed to assume any responsibility for the repayment of defendants' business loans with the Exchange National Bank which Banks and Goldstein had assumed as part of the agreement to purchase. Plaintiff was not a stockholder or

officer in Stugo, Inc., nor had she ever worked for Electric, or Truck or Stugo.

In 1985, plaintiff decided to sell the property and brought suit to quiet title to remove the trust deed as a cloud on her title. Defendants countersued to foreclosure on the trust deed.

The record does not indicate what, if any, action was taken by defendants against Banks or Goldstein to recover on the promissory notes which are the underlying debt for which the trust deed was given as security. Defendants acknowledge that they have initiated no action to recover on the notes against Goldstein, their son-in-law, nor have they sought to foreclose on the trust deed given by Goldstein and his wife. Sometime after default on the notes and before the filing of the suit to quiet title, Banks filed a bankruptcy petition listing the promissory notes among his debts. He was adjudicated a bankrupt, and this debt was discharged.

■ Consideration for a mortgage or trust deed usually flows between the mortgage and mortgagor, but in certain situations the consideration can also flow to a third party. (*Thackaberry v. Johnson* (1907), 228 Ill. 149, 154, 81 N.E. 828, 830; *Codo v. Union National Bank & Trust Co.* (1977), 54 Ill. App. 3d 810, 812, 370 N.E.2d 140, 142.) The exception to the rule is the situation where the mortgagor is a stranger to the underlying transaction. (*Turner v. Porter* (1931), 264 Ill. App. 15.) Where a wife secures notes made to her husband and the creditor accepts the wife's note for less than the debt, the court has found consideration for the mortgage has been given (*Post v. First National Bank* (1891), 138 Ill. 559, 564, 28 N.E. 978, 979), or where the mortgagee released unliquidated claims (*Boley v. Whipple* (1965), 62 Ill. App. 2d 448, 453, 211 N.E.2d 113, 115). Although the parties in *State Bank v. Sorenson* (1988), 167 Ill. App. 3d 674, 521 N.E.2d 587, were engaged but not married, the court found sufficient consideration for the woman's mortgage made on the man's behalf because the mortgagee bank had "cancelled [the man's] preexisting debt, returned the collateral it was holding on that debt, and made a new cash disbursement," noting that the mortgagee's change in condition served as valid consideration. *Sorenson*, 167 Ill. App. 3d at 684, 521 N.E.2d at 594.

■ No case parallels the peculiar facts of the instant case, however, where an estranged wife is persuaded to cosign a trust deed on the house owned in joint tenancy with her estranged husband so that he can complete a wholly leveraged purchase of the businesses in which he works. In *Peterson Bank v. Langendorf* (1985), 136 Ill. App. 3d 537, 539, 483 N.E.2d 279, 280, the court noted that where there is

a claim of insufficient consideration, the interests of the parties must be examined, and this is best done by "consideration of all instruments executed by the contracting parties in the course of the transaction, and such construction must take place within the context of the overall transaction." *Peterson Bank*, 136 Ill. App. 3d at 540, 483 N.E.2d at 281, citing *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 454 N.E.2d 676.

Here, plaintiff's only act was the cosigning of the trust deed with Banks. She was unrelated to any of the parties except Banks and had been separated from him for over a year. Plaintiff has not communicated with any of the parties except Banks since 1975 and was characterized at trial by defendant Steimberg, one of the sellers, as a stranger to the sale of the businesses except for her signature on the trust deed.

This situation is similar to that in *Turner v. Porter* (1931), 264 Ill. App. 15. In *Turner*, Fred L. White gave a check to Frederick A. Turner in repayment of a debt. The check was returned by the bank for insufficient funds. Turner pressured White to obtain security for the debt, and through a friend, White met Agnes Porter, with whom he had not previously been acquainted but whom he induced to execute a note for the amount due, securing it with a trust deed on some real property she owned. When White defaulted, Turner sued to foreclose on the trust deed, and Porter countersued to quiet title and to remove the mortgage as a cloud on her title.

There, the court noted that Porter had not understood the nature of the transaction and "did not know White and knew nothing about his business affairs except that he needed some financial assistance." (*Turner*, 264 Ill. App. at 19.) No consideration passed to Porter, and none passed between White and Turner because White was as indebted to Turner as he had been before the transaction.

■ Here plaintiff was clearly a stranger to the underlying transaction and cosigned the trust deed only at Banks' urging and upon his assurances that this was a mere formality since she and Banks held title to the house in joint tenancy. The trial court found that plaintiff received no consideration for her signature on the trust deed and properly held that as a stranger to the transaction, she was not liable for the underlying debt.

■ The underlying debt was discharged by Banks' bankruptcy, thereby extinguishing any basis for the continuation of the trust deed as security for a nonexistent debt. We find no error in the trial court's ruling granting plaintiff judgment removing the trust deed as a cloud on her title and denying defendants' countersuit to foreclose

their purported lien on the property. Since the underlying debt is discharged, there is no legal basis for foreclosure of the trust deed.

Because this case has been decided on the foregoing grounds we need not discuss the issue of *laches*.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

EGAN, P.J., and QUINLAN,* J., concur.

---

*Justice Quinlan participated in this opinion prior to his resignation from the court.