## MORRIS v. FLENNER et al.

District Court, E. D. Illinois. April 9, 1928.

No. 93–D.

**1. Bankruptcy ⊛➢303(5)—In trustee's suit to set aside conveyance by bankrupt, evidence held to show equity worth $6,946.11 was sold for $300.**

In suit by trustee in bankruptcy to set aside bankrupt's conveyance shortly before adjudication, as being in fraud of creditors, evidence *held* to show that land was worth $31,875 with incumbrances aggregating $24,928.89, and that equity worth $6,946.11 was sold for $300.

**2. Bankruptcy ⊛➢303(5)—Evidence held to require setting aside as fraudulent bankrupt's conveyance, shortly before adjudication, for insufficient consideration, to son's brother-in-law.**

In suit by trustee in bankruptcy to set aside conveyance made by bankrupt shortly before adjudication as in fraud of creditors, evidence *held* sufficient to require decree for complainant where purchaser was brother-in-law of bankrupt's son, lived some distance from land, and never occupied it, but after paying inadequate price, allowed bankrupt's son to continue possession.

**3. Fraudulent conveyances ⊛➢183(1)—Fraudulent conveyance is void without reimbursement to grantee participating in fraud, but otherwise will be upheld to extent of actual consideration.**

Where grantee participates in fraud against grantor's creditors, has guilty knowledge thereof, or intends to make possible such fraud, transfer becomes void without reimbursement, but, if transfer is set aside as constructively fraudulent to creditors so far as grantee is concerned, it will be upheld to extent of actual consideration.

**4. Fraudulent conveyances ⊛➢9—Conveyance is fraudulent as against creditors, if entered into with fraudulent intent, or if declared fraudulent as conclusive presumption of law.**

Conveyance of property may be deemed fraudulent as against creditors, where conveyance is entered into with fraudulent intent to hinder and delay creditors, or where from terms of agreement for conveyance or nature of transaction conveyance is declared fraudulent as conclusive presumption of law, without regard to real motives or purposes of debtor.

**5. Bankruptcy ⊛➢305—On setting aside of bankrupt's conveyance before adjudication, wife's inchoate right of dower held not considered lien in determining value of equity conveyed.**

Where trustee in bankruptcy had bankrupt's conveyance set aside as fraudulent, bankrupt's wife's inchoate right of dower *held* not considered as lien on land in determining value of equity, since property was not to be reconveyed to bankrupt, as court of equity does not require useless things.

In Equity. Suit by Hiram W. Morris, trustee of the estate of Martin Flenner, bankrupt, against Martin Flenner and others. Decree for complainant.

Craig & Craig, of Mattoon, Ill., for plaintiff.

A. C. Anderson, of Charleston, Ill., and Hays & Hays, of Sullivan, Ind., for defendants.

LINDLEY, District Judge. Plaintiff, as trustee in bankruptcy for Martin Flenner, bankrupt, brings this suit against the bankrupt and his wife, the bankrupt's son, Tolbert A. Flenner, and his wife, and Harry G. Behler, to recover 187½ acres of land in Coles county, Ill., which the bankrupt, shortly before his adjudication in bankruptcy, conveyed to Behler, a plumber of Sullivan, Ind., brother-in-law of Tolbert A. Flenner, on the ground that the same was conveyed in fraud of creditors. The theory of the plaintiff is that the consideration paid by Behler to Flenner was so grossly inadequate and so out of proportion to the real value of the equity in the land as, in view of the surrounding circumstances, to constitute fraud.

Defendant Behler had resided in Sullivan, Ind., for more than twenty years. He and Tolbert A. Flenner married sisters. Tolbert A. Flenner lived upon the farm of his father, exercised complete dominion over the same, and handled the transfer to Behler. He went to Sullivan; there saw his brother-in-law; told him that his father, the bankrupt, needed money to pay his debts, that there was a mortgage upon the farm, that the interest was delinquent for the year, and that the taxes were due. Behler had been upon the land at rare intervals, but had never farmed in Indiana or Illinois, and apparently had never made a critical examination of the land or of the other conditions bearing upon the value of the premises. He owned no other farm land, and had no property in the state of Illinois. Tolbert A. Flenner and Behler both testified that the trade was made before Behler renewed his acquaintance with the land. There was no discussion of the farm's value. Behler borrowed the money from his bank, and took the land subject to a mortgage of $23,500, delinquent interest thereon of $1,127.33, and taxes of $301.56, or a total incumbrance of $24,928.89. For the equity he paid the sum of $300. The testimony of himself and his brother-in-law is that Behler did not remove to the farm, but employed Flenner to operate it, as his agent, at a salary of $50 per month and pasture rights until October 1, 1927, and upon a salary of $100 per month after that date. The possession of Tolbert

A. Flenner, to all outward appearances, was the same after the transfer as previously. At the time of the conveyance, the bankrupt owed something in excess of $20,000 to other creditors, and had no other property other than personal property, upon which he placed a mortgage of $2,200, representing a loan of that amount by Behler, and constituting the full value thereof.

[1] In this situation the material question is as to the value of this equity which the defendant Behler purchased for $300. Eleven witnesses for plaintiff, including some of the creditors, and six witnesses for the defendant, including defendants Tolbert A. Flenner and Behler, testified as to the value of this land. All of them were acquainted with the premises, the improvements thereon, location, character of the soil, drainage, and the values of similar lands in the same locality similarly situated. The average value put upon the tract by the witnesses for the plaintiff was $192 per acre; the average value put upon the land by the witnesses for the defendant was $142 per acre. The average value put upon the land by all of the witnesses, including some interested creditors, and the two most interested defendants, was in excess of $170 per acre. Other sales of other lands in the community were shown by plaintiff, running from $175 to $250 per acre; and one or two sales of other lands was shown by the defendants at less than $125 per acre. The land produced in the year 1927 approximately $3,400 worth of crops. Deducting from said income the interest upon the mortgage of $1,292.50 and the taxes of $300, there was left over $1,800 as net income, less the amount necessary for repairs and depreciation. Behler declined an offer of $175 per acre, saying that he held the land at a higher price. The farm is located upon a paved state road within two miles of a market. In this situation the court believes the fair cash market value of the land in question at the time the defendant Behler received the deed for it was at lease $170 per acre, or $31,875. It was then subject to incumbrances aggregating $24,928.89. The fair cash market value of the equity, therefore, was $6,946.11. For this equity the defendant Behler paid the sum of $300, or about one twenty-third of its value. True it is he has reduced the incumbrance upon the land by the sum of $1,428.89, but. what he bought was the equity in the land over and above the incumbrances. If we treat his reduction of incumbrances—that is to say, delinquent interest of: $1,127.33 and taxes of $301.56—as part payment of the

purchase price, then he purchased an equity worth $8,375 for a total of $1,728.89, but little more than one-fifth of its fair market value.

[2, 3] Considering the circumstances, the relationship of the parties, the distance of the purchaser from the land; his failure to occupy the same, the continued possession of his brother-in-law who made the sale to him for the bankrupt, the vocation of the purchaser, the income from the land, the purchaser's failure to make any examination of the property he bought, his failure to inquire as to the amount of debts, the inadequacy of the purchase price, and all of the other circumstances, it seems to the court there can be no question but that this equity should be recovered by the trustee. Gross disparity between the consideration paid and the actual value of the property has long been considered a badge of fraud, and, if it is so gross as to justify the inference of actual fraud, a chancellor may refuse to reimburse the grantee. If the grantee participates in the fraud perpetrated upon creditors, has guilty knowledge thereof, or intends to make possible such a fraud, then the transfer becomes void without any reimbursement. See Biggins v. Lambert, 213 Ill. 625, 73 N. E. 371, 104 Am. St. Rep. 238. If, however, the transfer is set aside solely upon the ground that it is, so far as the grantee is concerned, one constructively fraudulent as to creditors, it will be upheld to the extent of the actual consideration, and vacated only as to the inadequacy. See Beidler v. Crane, 135 Ill. 92, 25 N. E. 655, 25 Am. St. Rep. 349. There is not sufficient evidence here that the defendant Behler actually participated in the fraud, or that he had actual knowledge of any intent to defraud creditors. He should have been more diligent, but the court does not feel warranted in declaring him a guilty participant in the fraud.

[4] What inadequacy of consideration will amount to constructive fraud is a question to be answered from a consideration of all of the circumstances of the particular case. In Biggins v. Lambert, supra, Id., 115 Ill. App. 576, a conveyance from brother to sister of property worth $11,000 for $1,900 was set aside. In Bay v. Cook, 31 Ill. 336, a conveyance of one brother to another of property worth $500 for $50 was vacated. In Reed v. Peterson, 91 Ill. 288, a conveyance of property worth $4,300 for $250 was set aside as fraudulent. In each of the foregoing cases the grantee was not reimbursed for any consideration actually paid. In Snyder v. Partridge, 138

Ill. 173, 29 N. E. 851, 32 Am. St. Rep. 130, property worth $4,000, transferred for $1,-000, was recovered, but the grantee was reimbursed for the actual consideration expended by him. The court said: "Where the consideration paid is small in comparison with the real value of the property, and where the circumstances of the case are extremely unfavorable to the fairness of the transaction, though not sufficient to establish absolute fraud, the conveyance will be regarded as a voluntary one to the extent of the difference between the actual consideration and the real value of the property, and, to that extent, will be treated as fraudulent and void as to existing creditors." In Hormberger v. Blackwell, 241 Ill. App. 398, a consideration of $3,000 was paid for property worth $7,000. There the court protected the grantee as to the actual consideration, but held the grant constructively fraudulent as to the balance. In Bartel v. Zimmerman, 293 Ill. 154, 127 N. E. 373, property worth $9,500 was conveyed for $4,000. There the court approved the conveyance as to the actual consideration, but declared it constructively fraudulent as to the excess. Similar cases are those of Beaver v. Danville Shirt Co., 69 Ill. App. 320; Lawson v. Funk, 108 Ill. 502; Kingman & Co. v. Mowry, 182 Ill. 256, 55 N. E. 330, 74 Am. St. Rep. 169; Scott v. Leaf River State Bank, 242 Ill. App. 268; Nelson & Co. v. Leiter, 190 Ill. 414, 60 N. E. 851, 83 Am. St. Rep. 142. The ground of each of the decisions is well stated by the Supreme Court in the last-mentioned case, as follows: "A conveyance of property may be deemed fraudulent as against creditors upon two distinct grounds: First, where the conveyance is entered into with the fraudulent intent to hinder and delay creditors; second, where, from the terms of the agreement for the conveyance or the nature of the transaction, the conveyance is declared fraudulent as a conclusive presumption of law, without regard to the real motives or purposes of the debtor. In the first class of cases the fraudulent intent is always a question of fact to be established by extrinsic proof. In the latter the conveyance is denounced as fraudulent as a legal inference, though the parties may not have been moved by any real design to hinder, delay, or defraud the creditor."

The circumstances of the present case bring it clearly within the decisions of this jurisdiction. The defendant Behler has received an equity of the value of $6,946.11 for the sum of $300. Since he procured this equity, however, he has reduced the incumbrances by the sum of $1,428.89. As to the deficiency in consideration of $5,217.22, the conveyance to Behler must be held constructively fraudulent. He may retain the land upon paying the trustee in bankruptcy, the plaintiff herein, the said sum of money, with interest thereon at the rate of 5 per cent. per annum from the date of the execution of the conveyance to him. If he does not desire to retain the land upon these conditions, then he shall convey the same to the trustee upon receipt of the sum of $1,728.89, subject to the said mortgage of $23,500, and interest thereon from the date of such conveyance, and subject to the taxes for the year 1928, but free of other incumbrances. Having enjoyed the possession of the farm since the conveyance to him, Behler must pay the interest and taxes until the date of his deed to the trustee, and is not entitled to any interest upon the money advanced for the land.

[5] The defendant contends that the inchoate right of dower of bankrupt's wife should, in determining the value of the equity, be considered a lien upon the land. This might be true if the property were to be reconveyed to the bankrupt, but a court of equity does not require a useless thing. All of the bankrupt's property has vested in the trustee in bankruptcy. The wife of the bankrupt has voluntarily, for a consideration that was satisfactory to her, released her inchoate right of dower. There shall be no reconveyance to the bankrupt, and the decree entered herein as of this date shall include an injunction against such transfer. If Behler does not exercise his option to retain the land, under the conditions above set forth, he shall cause a good and sufficient conveyance to be made, as above set forth, to the trustee directly, and the decree shall so provide. Plaintiff shall recover his costs against defendants Martin Flenner, Tolbert A. Flenner, and Harry G. Behler. Proper decree may be submitted.