In the Matter of Lucio F. RUSSO, Bankrupt.

Avery J. GROSS, as Trustee in Bankruptcy of Lucio F. Russo, Bankrupt, Plaintiff,

v.

Lucio F. RUSSO and Tina Russo, Defendants.

Bankruptcy No. 78–B–22.

United States Bankruptcy Court, E. D. New York.

Nov. 30, 1979.

Leon Brickman, Brooklyn, N. Y., for plaintiff.

Robert W. Tauber, Brooklyn, N. Y., for defendant, Lucio F. Russo.

Anthony J. DeMarco, Jr., P.C., Brooklyn, N. Y., for defendant, Tina Russo.

MANUEL J. PRICE, Bankruptcy Judge.

This is an adversary proceeding brought by Avery J. Gross, "THE TRUSTEE," pursuant to Rule 701(1) of the Rules of Bankruptcy Procedure against Lucio F. Russo, "RUSSO" or "THE BANKRUPT," and his wife, "TINA," to set aside, as fraudulent, the conveyance by the bankrupt to his wife of his interest in their home at 82 Romer Road, Staten Island, New York which had been owned by them as tenants by the entirety.

The trustee bases his action on Section 70e(1) of the Bankruptcy Act, 11 U.S.C. § 110e(1), which provides:

"e. (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under

any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."

The complaint contains five causes of action. The first four seek relief, in the alternative, under Sections 273–a, 273, 275 and 276 of the New York State Debtor and Creditor Law, McKinney's Consolidated Laws of New York, Book 12. The fifth cause of action seeks reasonable counsel fees pursuant to Section 276–a of the Debtor and Creditor Law.

Section 273–a provides that every conveyance made without fair consideration by a person who is a defendant in an action for money damages is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if he does not satisfy the judgment obtained against him.

Section 273 provides that every conveyance made without fair consideration by a person who will be rendered insolvent thereby is fraudulent as to creditors without regard to his actual intent.

Section 275 provides that every conveyance made without fair consideration by a person who believes that he will incur debts beyond his ability to pay is fraudulent as to both present and future creditors.

Section 276 provides that every conveyance made with actual intent to hinder, delay, or defraud creditors is fraudulent.

The following is a short resumé of the facts which are uncontroverted:

Russo and his wife took title to the property at 82 Romer Road by deed dated October 5, 1956 (Plaintiff's Exhibit 1). The purchase price was $35,000 (Transcript p. 141, L. 5). On October 15, 1956, Russo made application for a mortgage of $20,000 on the property at Colonial Federal Savings and Loan Association in Staten Island (Plaintiff's Exhibit 10). On October 31, 1956, both Russo and his wife executed a mortgage in favor of this institution for $20,000 which was recorded on November 2, 1956

(Plaintiff's Exhibit 11). On July 28, 1972, one Reuben E. Gross, "GROSS," commenced an action against Russo in the Supreme Court, Richmond County, seeking money damages against him for legal services. Issue was joined in February, 1973 and, on September 6, 1973, Gross served a Note of Issue which was filed on September 7, 1973 (Plaintiff's Exhibit 2). On that day, Russo served a Jury Demand which was filed on September 10, 1973 (Plaintiff's Exhibit 3). On October 19, 1973, Russo and his wife executed a deed to the property to Tina alone which was recorded in the Richmond County Clerk's Office on the same day (Plaintiff's Exhibit 4). On October 24, 1977, after trial, judgment was entered in favor of Gross against Russo for $25,762.77 (Plaintiff's Exhibit 5). On January 4, 1978, Russo filed a voluntary petition in bankruptcy in this court and was adjudicated on that day. Gross was listed as a disputed creditor for $25,762.77 in Schedule A–3.

After the conveyance to Tina, neither the mortgagee nor her insurance broker was notified of the change of ownership and there was no change in the name of the homeowner as it appeared on the insurance policies issued on the property. There was no change in the way the property was listed on the tax rolls of the New York City Real Property Assessment Department and, for as late as November, 1978, the property was listed as being in the name of "L. F. Russo" (Plaintiff's Exhibit 6).

Notwithstanding the transfer to Tina in October, 1973, Russo included the property among his assets in financial statements issued by him to the First National City Bank on January 2, 1974 and March 21, 1977. He listed it in the "Schedule of REAL PROPERTY OWNED" as title being in the name of "husband and wife." (Plaintiff's Exhibits 9 and 12).

The trustee contends that the proof at the trial shows that the bankrupt transferred his interest in the property to his wife without fair consideration at a time when he was the defendant in the action brought against him by Gross; that it rendered him insolvent and that it was made with actual

intent to hinder, delay, or defraud his creditors, particularly Gross.

On the question of fair consideration, he relies on the testimony of the bankrupt given at the first meeting of creditors and read into the record of the trial, at page 22 of the transcript, in which he testified that the real property tax form filed by him with the Finance Administrator of the City of New York after the transfer to his wife showed that there was no consideration for it and the Russos' admissions that no cash consideration passed at the time of the transfer.

On the question of Russo's insolvency at the time of the transfer, the trustee relies on the bankrupt's testimony as to his assets and liabilities at that time which showed, that without his interest in the property, his liabilities exceeded his non-exempt assets.

The Russos deny that the transfer was made without fair consideration, that it rendered him insolvent, or that it was made to hinder, delay, or defraud his creditors. Their testimony is to the effect that:

When they decided to purchase the property on Romer Road for $35,000, Russo had no funds with which to make the $15,000 down payment which was required. It was made by Tina who had been employed as a fur designer. She used her savings of $10,-000 and she borrowed the additional $5,000 from her father. She attempted to get a mortgage for the balance of $20,000 but was unable to do so, because, at that time, lending institutions refused to grant mortgages to women. Due to this policy, Russo made application for it at Colonial Federal Savings and Loan Association which was granted. Title to the property was taken in both their names and they both executed the mortgage.

They continued to own the property in both their names and Tina made some of the payments necessary to maintain it. In 1966 or 1968, they started having marital difficulties due to the fact that he was in politics. (He had been elected to the New York State Assembly in 1952 and continued to serve until 1974 when he was defeated in the primary). Their marital difficulties continued, during which she kept demanding that he transfer his interest in the home which, she said, was purchased with her money, to her. In order to satisfy her and to maintain their marriage, he transferred his interest to her in October, 1973.

They denied that he was insolvent at the time the transfer was made or that it rendered him insolvent. He testified that his net income, before taxes, as reported in his 1972 federal income tax return was over $77,000 and that in 1973 it was over $42,000. His financial difficulties started after he was defeated in the 1974 primary. Prior thereto he had had no difficulty in paying his obligations and, except for the Gross claim, he had been reducing them until he filed his petition in bankruptcy.

Russo denied that the transfer was made to his wife to hinder, delay, or defraud his creditors, particularly Gross, since he did not consider that he owed him anything and he felt he could not lose the lawsuit which had been brought against him. He had always considered the house to be hers since she had made the down payment and had contributed to its upkeep.

Before discussing the merits of the contentions made by the parties, it should be observed that transactions within the immediate family are to be carefully scrutinized. *In re Rosenfield's Will*, 213 N.Y.S.2d 1009 (Surr.Ct. Westchester Co. 1961), aff'd 18 A.D.2d 718, 236 N.Y.S.2d 941 (2nd Dept. 1962) because "fraud is so easily practiced and concealed under the cover of the marriage relation." *White v. Benjamin*, 150 N.Y. 258, 44 N.E. 956 (1896).

Because it is an element of the trustee's first three causes of action, the issue of fair consideration assumes threshold importance. It is defined in Section 272 of the New York Debtor and Creditor Law as:

"§ 272. Fair Consideration

Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

■ Since there was no proof that any tangible present consideration passed from Tina to Russo for the 1973 transfer, the burden of going forward on that issue shifted to her. *Cody v. Hovey,* 256 App.Div. 1038, 10 N.Y.S.2d 739 (4th Dept.1939). The Russos testified that the purpose of the conveyance was to satisfy an antecedent indebtedness running from him to her and also to terminate their marital difficulties. They argue that she had provided the funds for the down payment on the house; that although title was taken in both names it was done so only for convenience, and their understanding was that the property really belonged to her; that over the years both of them had contributed to the mortgage payments and maintenance; that sometime in 1966 or 1968 they experienced marital difficulties which caused her to begin demanding that title to the property be transferred to her; that these demands continued for at least five years; and that finally, in 1973, Russo, to satisfy Tina's demands, and pursuant to the original understanding that the property really belonged to her, deeded their tenancy by the entirety to her alone. They thus conclude that Tina's providing the funds for the down payment on the house and contributions to the mortgage payments and upkeep, coupled with Russo's obligation to convey the property to her constituted fair consideration for the 1973 conveyance.

Let us examine whether Tina's testimony that she made the $15,000 down payment on the property is corroborated by the documents in evidence. Russo's testimony is to the effect that there was a simultaneous closing of the deed and mortgage. It appears at page 100, line 5 to page 101, line 4 and is as follows:

"Q. Mr. Russo, you testified that there came a time where someone told you that you had to take title together with your wife; is that correct? That in order to get the mortgage, you had to take title together with her; is that correct?

"A. Yes, and I had to apply also.

"Q. Was there a closing held, Mr. Russo?

"A. Yes.

"Q. And was that a simultaneous closing with the deed and the mortgage?

"A. Yes.

"Q. And you attened (*sic*) that closing?

"A. Yes.

"Q. Now, you are very certain of that, Mr. Russo?

"A. Well, I signed the bond and mortgage.

"Q. And you are sure that at the time you closed and took title to the property, that you signed the mortgage at that time; is that correct?

"A. My best recollection is that both my wife and I were present.

"Q. And you signed the mortgage and obtained the deed at the same time. Is that your testimony?

"A. Yes."

However, the deed to the property from Alfred A. Bacci to the Russos, (Plaintiff's Exhibit 1) is dated *October 5, 1956,* and was acknowledged by the grantor on that date. It contains six United States documentary stamps of $1.10 each for a total of $6.60 which represents consideration of *$6,000* (Section 4361 of the 1954 Internal Revenue Code, 26 U.S.C. § 4361). Russo did not even make application for the mortgage (Plaintiff's Exhibit 10) until *October 15, 1956,* ten days *after* the date of the deed and the mortgage was not signed and acknowledged by them until *October 31, 1956,* some twenty-six days *after* the property had been deeded to them (Plaintiff's Exhibit 11). If Tina's down payment was $15,000, why were there only documentary stamps representing $6,000 attached to the deed and why was the deed executed in both their names before Russo even applied for the mortgage?

Although unsupported by any evidence other than the testimony of the Russos, let us assume, *arguendo*, that Tina did, in fact, provide the down payment on the house. Nonetheless, and despite the uncorroborated contentions in the briefs of counsel for both of them, it is clear from the record before me that, at the time of the purchase of the Romer Road property in 1956, there was no agreement that the property belonged to Tina.

During cross-examination of the bankrupt by the trustee's counsel, he testified as follows:

"Q. When for the first time was there any discussion between you and your wife concerning the title of that property?

"A. It seems to go on forever.

"Q. When for the first time?

"A. I'd have said it was at least five years but on reflection, I think it was even longer than that. It seemed to be a subject of conversation all the time.

"Q. Mr. Russo, do you remember being examined in this court on January 27, 1978? Counsel, I'm going to page 68, starting at Line 19. Do you remember the following questions and answers asked of you, Mr. Russo?

'Question: Was there any agreement between you and your wife with respect to actual ownership of the house? Answer: *There was no agreement whatsoever.*'

Do you remember that question and answer?

"A. Yes.

"Q. Is that answer correct?

"A. Yes.

"Q. 'Question (*sic*) was there any written memorandum at ant (*sic*) time prior to taking title at that time or subsequent to taking title?'

\*　　\*　　\*　　\*　　\*　　\*

'Answer: No, *we never had any discussion on it until 1973.*' Do you remember that question and answer, Mr. Russo?

"A. I don't remember."

(Transcript p. 111, L. 17—p. 118, L. 20) (emphasis added)

At page 114, LL. 3–7 of the Trial Transcript, as part of the same examination the following appears:

"Q. But in . . . '56 when you took title in both names, there was never any conversation at that time or any agreement or any understanding that you would give any property back to your wife? Was there, Mr. Russo?

"A. No."

Tina's testimony does not contradict what is apparent from his—that there was no agreement between them concerning title to the property dating back to 1956 when it was purchased. On her direct examination, the following appears:

"Q. Did you have conversations with Mr. Russo concerning title to the property, yes or no?

"A. Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Using 1973 as a guidepost, prior to '73, when did it first start?

"A. For many, many years but it was very, very forceful for about five years before that." (p. 144, L. 16—p. 145, L. 7)

Despite Tina's vague reference to "many, many years," the salient fact is that she also does not claim that there was any agreement, or even discussion, concerning title to the property in 1956 when the property was purchased or for years thereafter. Thus, no antecedent indebtedness can be said to have arisen when the Romer Road property was purchased since there was no agreement by Russo to transfer his interest to her.

The Russos' contention that there was fair consideration for the October 19, 1973 conveyance also rests on the premise that antecedent indebtedness, or possibly present consideration, arose out of their alleged "marital difficulties" which supposedly oc-

curred during the five or seven year period preceding the conveyance to Tina. During this time, she was allegedly insisting on having the property transferred into her name. The reason proffered by the Russos for these sudden demands is that they were having marital problems, and that the conveyance was supposed to, and did, settle these difficulties. On direct examination of Russo, he testified as follows, at page 51, line 24 to page 52, line 11:

> "Q. In 1973, there was a time when you and your wife transferred the property at Romer Road to your wife. May I ask the purpose or reason for doing that?
>
> \*    \*    \*    \*    \*    \*
>
> "A. Well, for several years before, my wife kept insisting that she have her property back. She said it was hers. And we did have some marital problems at the time, and one of the ways of resolving it or partially resolving it was to make this transfer of property that was never mine."

On direct examination of Tina, in response to a question concerning the "underlying problem" causing her sudden demands to have the Romer Road property conveyed to her, stated: "[w]e were having some marital problems. It was all due to his being in politics." (P. 145, L. 13.)

After observing the demeanor of the Russos and after examining their testimony, it is my opinion that their "marital difficulties" explanation for the October 19, 1973 conveyance is not credible.

There being no evidence of an agreement that the property actually belonged to Tina dating back to the time of the original purchase, we are left with the contention that ten or twelve years after the original purchase, and due to some unspecific "marital difficulties," Tina suddenly began insisting that the property was "really hers"; or, in the alternative, that they decided that the way to settle their differences was to deed the property to her. I do not believe their testimony on this point. A far more reasonable explanation for the October 19,

1973 conveyance is that they were concerned with the action which Gross had commenced for substantial money damages against Russo in 1972, the Note of Issue in which was filed on September 17, 1973 (Plaintiff's Exhibit 2), approximately six weeks before, and they wanted to remove it from the reach of any judgment which he might obtain.

Even if the reason for the conveyance was, in fact, some marital difficulties between them it would not help their case because even if the evidence in the record is to be believed, fair consideration would still be lacking.

Although Tina's counsel, in his brief, attempts to characterize the consideration for the conveyance in terms of Tina's "promise not to divorce," and without commenting on the viability of proving fair consideration based on such a promise, the simple fact is that absolutely no evidence of such a promise was elicited at trial. There was no testimony by either Russo or Tina that divorce, or separation was contemplated by either of them. They continued to live together for over five years while these purported marital difficulties were going on caused, ostensibly, by his involvement in politics. Strangely enough, these difficulties purportedly ended when his interest in the property was transferred to her in 1973 while he continued to be involved in politics until his defeat in the 1974 primary.

■ The Russos have failed to meet their burden of going forward on the issue of fair consideration for the 1973 conveyance to Tina. See *Herter v. Krzewinski*, 233 App. Div. 240, 251 N.Y.S. 331 (4th Dept.1931). In that case, the husband had owned a farm since 1918. On October 17, 1929, his son, driving his car, struck and injured the plaintiff. On November 7, 1929, the husband conveyed the farm to his wife. The plaintiff recovered a substantial judgment against the husband on May 1, 1930. In the action to set aside the conveyance, the husband testified that his wife had provided one-half of the purchase price of the farm and that they had an understanding that

she was to have a one-half interest therein, although, for convenience, title was taken in his name alone. He also testified that she had contributed substantial sums to the family business and had done most of the farm work. In rejecting this testimony, the court said, 251 N.Y.S. at page 333:

"*The law looks carefully at transactions between husband and wife in cases where the rights of creditors are present. These transfers were made without a present consideration and are defended solely upon the ground that the properties were held in trust for the wife in pursuance of an arrangement made at the time the husband took the deed.* The fact of the accident which occurred so near the date of the transfer, and the denial by each defendant that they thought of or discussed it in connection with the transaction, and other circumstances, raise a serious doubt of the good faith of these parties. In our opinion the finding of Special Term that the purchase price of the interest in the farm deeded to the husband and the personal property on it were furnished by the wife is contrary to the evidence." (emphasis added) See also *B.W.G. Cooperative Corp. v. Collison*, 24 N.Y.S.2d 651 ([Sup.] Erie Co., 1941); *Macken v. Gass*, 23 F.Supp. 320 (W.D.N.Y.1938); *Cody v. Hovey*, 256 App.Div. 1038, 10 N.Y.S.2d 739 (4th Dept.1939); *Neilson v. Sal Martorano, Inc.*, 36 App. Div.2d 625, 319 N.Y.S.2d 480 (2d Dept. 1971).

The aforesaid conclusion is buttressed by the fact that the Russos made no effort to change any of the indicia of ownership regarding the conveyed property beyond changing the names on the deed. They did nothing to indicate that the property had been transferred to Tina alone. She admitted as much in a deposition read into the record by the trustee's attorney at page 22, line 12 to page 24, line 11:

"Mr. Brickman: (trustee's counsel) I'd like next to read, Your Honor, from a deposition of the defendant Tina Russo, United States District Court, Eastern District of New York, held in the Supreme Court, Staten Island, December 19, 1978 on page 41.

\* \* \* \* \* \*

"Question: Mrs. Russo, when the change of the title or ownership was effected by means of this deed in October of 1973, did you thereafter ever give any notice to the bank holding the mortgage that there was a change in the ownership of the property?

"Answer: No.

"Question: Did you ever fill out a little card or otherwise give notice to the Finance Administrator's Office where you check the real estate taxes, notifying that office that title had been transferred to yourself?

"Answer: I don't remember.

"Question: Mrs. Russo, who was your insurance broker who carried the homeowners policy on your house?

"Answer: Brennan.

"Question: Did you ever notify the Brennan Agency shortly after the making of this deed in October of 1973, to the effect that title had been placed in your name?

"Answer: No."

In addition, in a financial statement issued to First National City Bank on January 2, 1974 (Plaintiff's Exhibit 9), Russo still listed the Romer Road property as one of his own assets despite the conveyance to his wife a few months earlier. Thus:

"Q. Mr. Russo, you executed this application for a loan, application with Citibank in connection with a loan; is that correct?

"A. Yes.

"Q. I notice that it's about two and a half months after the transfer of the property by you to your wife; is that correct, Mr. Russo, the date of it January 2, 1974?

"A. January 2, 1974.

"Q. I notice that you list there as an asset, real estate, $150,000 and it says on the back 82 Romer Road. That is the property in question; is that correct?

"A. That's right.

"Q. And that was after the transfer, you still listed it as your property; is that correct?

"A. That's correct." (p. 93, L. 15—p. 94, L. 6)

It is evident that the Russos treated the conveyance as nothing more than a paper transaction made without fair consideration.

Having found the conveyance at issue to have been made without fair consideration, has the trustee met the burden of proof as to the other aspects of the sections of the New York Debtor and Creditor Law upon which he relies? In the first cause of action, he relies on Section 273–a which provides:

"Every conveyance made without fair consideration when the person making it is ·a defendant in an action for money damages . . . is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

The evidence is clear that on October 19, 1973, the date of the transfer of Russo's interest in the Romer Road property to Tina, he was the defendant in an action for money damages commenced against him by Gross in the Supreme Court, Richmond County. Exhibit 2 introduced into evidence by the trustee is a certified copy of the Note of Issue filed in that case on September 7, 1973 which reveals that the summons was served on "July 28, 1972" and that issue was joined in "February, 1973." Exhibit 3 is a certified copy of the Jury Demand served on behalf of Russo on September 7, 1973. Exhibit 5 is a certified copy of the judgment in the sum of $25,762.77 entered in favor of Gross against Russo in that case. Neither of the Russos claim that any payment was made thereon. As a matter of fact, the petition in bankruptcy and schedules filed by the bankrupt, which were deemed marked in evidence, list Gross as a disputed creditor in the amount of $25,-762.77 (Schedule A–3), the exact amount of the judgment. Since I have already found

that the conveyance was made without fair consideration it is apparent that the trustee has proved every element required by Section 273–a.

Tina's counsel argues that Section 273–a should not be given a "broad construction" to encompass the transfer by Russo to Tina; that "the legislature did not intend to void truly innocent conveyances under Section 273–a" (DeMarco memorandum, p. 13), yet he quotes from the Third Preliminary Report of the Advisory Committee on Practice and Procedure [N.Y.Leg.Doc., (1959), No. 1711, page 288 which states:

"In addition to provisional remedies which may be available, the *advisory committee recommends that creditors have a further remedy* to discourage a defendant from fraudulently disposing of assets in contemplation of an adverse judgment while an action is still pending. In order to overturn such transfers under the Fraudulent Conveyance Act, the creditor is presently required to show actual intent to defraud; or that the debtor was rendered insolvent by the transfer; or that after any particular conveyance by a debtor in business he was left with an 'unreasonably small capital'; or that the debtor intended or believed that he would incur debts 'beyond his ability to pay as they mature' at the time of the conveyance. N.Y.Debt. and Cred.Law §§ 273, 274, 275, 276. *These facts are frequently difficult to prove.*" (emphasis mine)

This quotation is hardly favorable to his position and he fails to quote the next paragraph of the report which is even more unfavorable since it states that:

"Even if the gift was made *without intent to defraud* and if the judgment debtor *was not rendered insolvent thereby and is not insolvent after judgment but simply chooses not to satisfy it,* there is nevertheless no reason for requiring the judgment creditor to pursue him rather than a gratuitous recipient of the debtor's assets." (emphasis added)

The legislature intended to give creditors an *additional* weapon to set aside a conveyance made without fair consideration, by a

debtor who was a defendant in an action for money damages if he failed to satisfy the judgment. It created an irrebuttable presumption of fraudulent intent irrespective of the grantor's solvency or his actual intent.

This is the position which the court took in the case of *Republic Insurance Company v. Levy,* 69 Misc.2d 450, 329 N.Y.S.2d 918 (Sup.Ct. Rockland Co. 1972) in granting summary judgment to the plaintiff in an action to set aside the conveyance of a piece of property. In that case, Eugene and Lea Levy and Republic Insurance Co., Inc. had been co-defendants in an action brought against them by the Town of Haverstraw. While the action was pending, the Levys conveyed the piece of property owned by them to a corporation which they controlled. Thereafter, judgment was rendered against all of the defendants and a judgment over was rendered in favor of Republic against the Levys. This judgment was unsatisfied and Republic sued to set the conveyance aside as fraudulent under Section 273–a. The court granted summary judgment in favor of Republic in spite of the contention by the Levys that the conveyance did not render them insolvent, that there were ample assets available to satisfy the judgment in the hands of a co-defendant and that they still controlled the property through their corporation. The court quoted page 288 of the Third Preliminary Report of the Advisory Committee on Practice and Procedure and stated, at page 921:

"From this, it is evident that the question "of insolvency is irrelevant to the considerations at hand."

The trustee has proved all of the elements required by Section 273–a and judgment is rendered in his favor on the first cause of action.

The trustee relies on Section 273 of the New York Debtor and Creditor Law in the second cause of action. This section provides that:

"Every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration."

Since I have determined that the conveyance at issue was made without fair consideration, what remains to be determined is whether Russo was insolvent on October 19, 1973, or, in the alternative, if he was rendered insolvent by the conveyance made on that day. Section 271 of the Debtor and Creditor Law defines insolvency as follows:

"1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

This is the same definition which is contained in Section 67d(1)(d) of the Bankruptcy Act, 11 U.S.C. § 107d(1)(d). The law is well settled that a conveyance made by a grantor, without consideration, at a time when he is indebted to various creditors raises a presumption of his insolvency.

This presumption was described by Judge Augustus N. Hand in the case of *Feist v. Druckerman,* 70 F.2d 333, at page 334 (2 Cir. 1934) as follows:

"Now, there is a rule of long standing in the New York courts that a *voluntary* (emphasis in original) conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, *in the absence of some proof to the contrary, that he was then insolvent. Cole v. Tyler,* 65 N.Y. 73; *Smith v. Reid,* 134 N.Y. 568, 31 N.E. 1082; *Kerker v. Levy,* 206 N.Y. 109, 99 N.E. 181; *GaNun v. Palmer,* 216 N.Y. 603, 111 N.E. 223." (emphasis supplied)

He then went on to say, at page 335: "In New York the Appellate Division has held that the presumption still survives. *Montalbano v. Mazziatta,* 236 App.Div. 845, 260 N.Y.S. 224. Such a presumption is no more than a rule of procedure in a particular jurisdiction. *It imposes on the volunteer transferee of one who has creditors the duty of going forward with proof to show the solvency of the trans-*

*feror in order to prevent the conveyance from being set aside.*" (emphasis mine)

In order to overcome this presumption, Russo testified that he had a net income, before taxes, in 1972 of over $77,000 and although it had dropped due to illness, in 1973 it was over $42,000; that at the time of the conveyance, in October, 1973, he had a thriving law practice; that he had had his seat in the Assembly for many years and had been elected twelve times with ever increasing pluralities and had no inkling that he would have opposition in the primary to be held in 1974; that his future financial problems, such as the loss of his seat were not foreseeable and that, except for Gross, he had been paying his creditors until he filed his petition in bankruptcy in 1978. On the basis of this testimony, he contends that he was not insolvent in October, 1973 nor did the conveyance render him insolvent.

Assuming these facts to be true, they are not relevant to the question of whether Russo was insolvent as defined in Section 271 of the Debtor and Creditor Law and Section 67d(1)(d) of the Bankruptcy Act. Russo's argument is based on his *income* at the time of the transfer while the statutes provide for the "balance sheet" test, namely, assets versus liabilities, or whether the fair salable value of his assets was sufficient to pay his debts. *United States v. 58th St. Plaza Theatre, Inc.,* 287 F.Supp. 475, 497 (S.D.N.Y.1968); *Elliiot v. Elliot,* 365 F.Supp. 450, 454 (S.D.N.Y.1973).

From the record it is undisputed that on October 19, 1973, the date of the allegedly fraudulent conveyance, Russo had the following liabilities: $4,593 owed to West Side Federal Savings and Loan Association, $5,000 owed to Barbara Witco, $4,500 owed to Bankers Trust Company, $20,000 owed to Central State Bank, $5,000 owed to Chemical Bank, $5,740 owed to Manufacturers Hanover Trust Company, and a debt to Rueben Gross, since judicially determined to be $20,627. See Plaintiff's Exhibit 8, Part B of Plaintiff's Requests for Admissions 19–24 and Russo's Third Amended Answer thereto.

The evidence thus reveals that Russo's total liabilities, on October 19, 1973, totaled approximately $65,460. This figure included the debt owed to Gross computed at $20,627. The trustee arrived at this figure by computing interest at 6% on $15,000, the amount of the jury verdict, to the date of the transfer. In Section 270 of the New York Debtor and Creditor Law, a "Debt" is defined as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Under this definition, the Gross claim should be included among Russo's debts on October 19, 1973.

As to his assets, the financial statement issued by him to First National City Bank on January 2, 1974 (Plaintiff's Exhibit 9) lists assets of $202,000. This figure includes $150,000 in real estate consisting of the Romer Road property, $7,000 in cash on hand and in the bank, $15,000 representing the cash value of life insurance and his interest in the New York State Retirement Fund valued at $30,000. However, these last two items are not properly viewed as assets under the section 271 and 273 insolvency test. Section 270 defines " 'assets' of a debtor" as "property *not exempt* from liability for his debts." (emphasis added). Both of the latter items are exempt under New York law. Section 166(1) of the New York Insurance Law exempts Russo's life insurance from seizure by his creditors and Section 110(2) of the New York State Retirement and Social Security Law does the same for his funds in the pension system.

The only evidence of any other assets which belonged to him at that time appears in the following testimony, at page 88, line 25 to page 89, line 25:

"Q. Did you have any other assets aside from your pension and your insurance policies?

"A. An automobile.

"Q. What kind of an automobile did you have?

"A. Cadillac I believe.

"Q. What year Cadillac was it?

"A. In '73?

"Q. Yes.

"A. I believe it was a '73.

\*       \*       \*       \*       \*       \*

"Q. Aside from your retirement fund, your insurance and your car, did you have any other assets as of October 19, 1973?

\*       \*       \*       \*       \*       \*

"A. We're talking about five years ago. There may have been some stock in 1973 and that's what I'm thinking about.

"Q. But you are not sure?

"A. I'm not sure."

No evidence of any other assets was introduced at trial. Thus, after transferring the property to his wife, he was left with $7,000 in cash, the car, and perhaps some stock of undetermined value, against over $60,000 in liabilities.

It is manifest that Russo, by executing the October 19, 1973 conveyance rendered himself insolvent within the meaning of Section 271. Thus, as the conveyance was made without fair consideration and rendered him insolvent, Section 273 provides another ground for the trustee to avoid the 1973 conveyance to his wife. The motion to dismiss the second cause of action is denied and judgment thereon is rendered in favor of the trustee.

The trustee also alleges that the conveyance at issue can be set aside under Section 275 of the Debtor and Creditor Law. That section provides that:

"Every conveyance made . . . without fair consideration when the person making the conveyance . . . intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

This statute is concerned with conveyances made by an individual with an eye toward shielding assets from future creditors. The trustee adduced no evidence that Russo either contemplated or actually incurred any additional debts after October 19, 1973. Hence, he is entitled to no relief under this section. Accordingly, the defendants' motion to dismiss the third cause of action is granted.

In the fourth cause of action, the trustee alleges that the October 19, 1973 conveyance is fraudulent under Section 276, which provides that:

"Every conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Under this section the trustee has the burden of proving that the debtor-grantor had *actual intent* to hinder, delay, or defraud his creditors as distinguished from the intent presumed in law in Sections 273–a, 273 and 274. Mere suspicion does not suffice. *Glenmore Distilleries Companies v. Seideman*, 267 F.Supp. 915, 919 (E.D.N.Y. 1967). However, it is almost impossible to obtain direct evidence of actual fraudulent intent since it is hardly likely that parties to such transactions would openly discuss their true purpose in transferring property. Because of the difficulty of obtaining direct evidence, it is well settled that it may be proved by circumstances surrounding the transfer which experience has shown often attend fraudulent conveyances. They are designated as "badges of fraud."

In the case of *Gafco, Inc. v. H.D.S. Mercantile Corp.*, 47 Misc.2d 661, 263 N.Y.S.2d 109, at page 114 (Civ.Ct.N.Y.Co.1965), the court summarized this principle as follows:

"Ordinarily, the question of fraud involves the element of intent. Since it is impossible to look into Schwartz' mind for the purpose of ascertaining his intent, it is necessary to consider the circumstances surrounding the assignment and determine the intent from what he did or failed to do. And, by reason of its nature, fraud is usually very difficult to prove by direct evidence, and such proof is unnecessary. See, *Pergrem v. Smith*, Ky., 255 S.W.2d 42, 44; *Battjes v. United States*, 6 Cir., 172 F.2d 1, 5. The issue of

fraud is commonly determined by certain recognized indicia, denominated 'badges of fraud,' which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them. (*Pergrem*, supra; also *Leonardo v. Leonardo*, 102 U.S.App.D.C. 119, 251 F.2d 22, 27; *Bentley v. Caille*, 289 Mich. 74, 78, 286 N.W. 163, 164.) Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud.' As was said in the *Bentley* case, supra: 'No effort to hinder or delay creditors is more severely condemmed by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied.' Although 'badges of fraud' are not conclusive and are more or less strong or weak according to their nature and the number occurring in the same case, 'a concurrence of several badges will always make out a strong case.' " See *Timmer v. Pietrzyk*, 272 Mich. 238, 242, 261 N.W. 313, 314; *Aiken v. United States*, 4 Cir., 108 F.2d 182, 183; *Battjes*, supra.

"So that, mere adroitness of technique should not be permitted to obscure the real facts. *Whether a transaction constitutes a fraudulent transfer must be determined from its intent and effect and not from its form; a court will look at the results* and not at the devious ways by which they were accomplished. *Brown Packing Co. v. Lewis*, 185 Misc. 445, 58 N.Y.S.2d 443; *Leifer v. Murphy*, 149 Misc. 455, 267 N.Y.S. 701." (emphasis mine)

In the case of *DeWest Realty Corp. v. I.R.S.*, 418 F.Supp. 1274 (S.D.N.Y.1976) the court discussed additional circumstances from which fraudulent intent would be inferred as follows, at page 1279:

"[T]he requisite intent under this section [276] need not be proven by direct evidence but may be inferred (a) where the transferor has knowledge of the creditor's claim and knows that he is unable to pay it; (b) where the conveyance is made

without fair consideration; or (c) where the transfer is made to a related party (i. e., husband to wife, corporation to stockholder)." Citing cases. (matter in brackets added). See also *Sabatino v. Cannizzaro*, 243 App.Div. 20, 275 N.Y.S. 677 (1st Dept.1934)

In the case of *Bement v. Dean*, 246 App. Div. 670, 283 N.Y.S. 172 (3d Dept.1935) failure to change the named ownership of property on the tax rolls and the continued carrying of the insurance in the husband's name after a conveyance of the property from husband to wife were cited by the court as grounds for setting it aside.

In the case at bar, we have seen that Russo conveyed his interest as tenant by the entirety in the Romer Road property to his wife by deed in which she joined:

(1) While the Gross litigation was pending against him;

(2) without fair consideration;

(3) without any change being made either on the tax rolls or with the insurance carrier designating Tina as the sole owner;

(4) that he continued to list the property as being owned by him and his wife in two financial statements issued by him to First National City Bank after the conveyance had taken place, the second statement having been issued as late as March 21, 1977;

(5) that the transfer rendered him insolvent;

(6) that after the judgment was rendered in favor of Gross no payment was made thereon;

(7) that three months thereafter he filed a voluntary petition in bankruptcy; and

(8) that he has continued to live in the property without interruption.

From the foregoing, it is apparent that numerous "badges of fraud" attached to the October, 1973 conveyance according to the cases heretofore cited. They all point to the fact that it was made because Russo was the defendant in the Gross action

for substantial money damages and wished to divest himself of this asset so, that if he lost the lawsuit, the property would not be in jeopardy. I find that the transfer of his interest in the Romer Road property to Tina was made by him and received by her with actual intent to hinder, delay and defraud Gross, one of his creditors.

The motion to dismiss the fourth cause of action is denied and judgment is rendered in favor of the trustee.

The trustee's fifth cause of action is brought under Section 276–a of the Debtor and Creditor Law for reasonable attorney's fees. This section provides:

"In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney."

■ Since I have found that the October 19, 1973 conveyance was made by Russo and received by Tina with actual intent to hinder, delay and defraud Gross, one of Russo's creditors, the trustee is entitled to recover reasonable attorney's fees from both of them pursuant to this section.

The attorney for the trustee is directed to serve upon the attorneys for the defendants and file with this court an affidavit setting forth the services rendered by him in connection with this action and the fee requested by him by December 12, 1979. The attorneys for the defendants may, if they wish, serve upon the trustee and trial counsel and file with this court by December 19, 1979 any affidavits by the defendants in opposition to the amount requested.

■ Since I have found that the conveyance of the bankrupt's interest in the Romer Road property was fraudulent as to Gross, who was one of the creditors, it is null and void as against the trustee and passes to the estate pursuant to Section 70e, subdivisions (1) and (2), 11 U.S.C. § 110e(1) and (2) which provide:

"e. (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer . . . shall be avoided by, the trustee for the benefit of the estate: *Provided, however,* That the court may on due notice order such transfer . . . to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee . . . . The trustee shall reclaim and recover such property or collect its value from and avoid such transfer . . . against whoever may hold or have received it, except a person as to whom the transfer . . . specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws."

There remains to be decided the question of the remedy to be granted to the trustee. This requires an examination of the effect of Section 70e(1) and (2) on the law of New York as to tenancies by the entirety in real estate.

Under New York law, each tenant in a tenancy by the entirety holds *per tout et non per my, Stelz v. Shreck*, 128 N.Y. 263, 28 N.E. 510 (1891). This means that each tenant is seised of the whole and not of any individual portion. *Matter of Reister v. Town Board of Fleming*, 18 N.Y.2d 92, 271 N.Y.S.2d 965, 218 N.E.2d 681 (1966). The right of the surviving spouse to the whole of property held by the entirety cannot be defeated by the act of the other spouse.

Under this aspect of New York law, the Russos take the position that even if the conveyance of October 19, 1973 is voidable by the trustee, it would be of little or no value to the estate because, upon avoidance the *status quo ante* would be restored, thus reconstituting the tenancy by the entirety formerly held by them. At that point, only the bankrupt's interest in the tenancy by the entirety would be available as an asset of the estate which would be of doubtful value. Furthermore, they argue they are each entitled to a $10,000 homestead exemption pursuant to Section 5206 of the New York Civil Practice Law and Rules which would protect Russo's interest in the tenancy by the entirety.

The trustee agrees that the bankrupt's interest in a reconstituted tenancy by the entirety would have limited value should the conveyance be avoided. However, he argues, under Section 70e(2) he has the option of either *avoiding* the conveyance or *preserving* it in the hands of the transferee for the benefit of the estate. He contends that by reason of the conveyance by both of the Russos to Tina alone the tenancy by the entirety was destroyed and he now elects to preserve it in her hands for the benefit of the estate free from the restrictions of the tenancy by the entirety. He therefore requests the court to order her either to convey a one-half interest in the property to the trustee or to direct that a money judgment be docketed as a lien against the property for the aggregate amount of the claims represented by him. The trustee urges the court to grant this remedy rather than avoiding the fraudulent transfer and "restoring the entirety, [which] would benefit the bankrupt and his fraudulent transferee, to the detriment of the creditors represented by the trustee . . ." (Trustee's memorandum, p. 36).

In support of his position, he has cited several cases which I have examined. In *Goetz v. Newell*, 183 Wis. 559, 198 N.W. 368, 4 Am.B.R. (N.S.) 531 (1924), the bankrupt husband had fraudulently placed real and personal property in his wife's name. The trustee was granted judgment for the full value of the property fraudulently given to her. However, none of the real property had been held by them as tenants by the entirety, it had been placed in her name alone; contrary to the situation in the case at bar. *Selvage v. Lamb*, 3 F.2d 142, 5 Am.B.R. (N.S.) 63 (E.D.Va.1924) is likewise inapposite as the realty fraudulently transferred by the bankrupt corporation to the wife of an officer and director of the bankrupt was never held by them as tenants by the entirety. *Macken v. Gass*, 23 F.Supp. 320, 36 Am.B.R. (N.S.) 723 (D.C.W.D.N.Y. 1938) and *Morris v. Flenner*, 25 F.2d 211, 12 Am.B.R. (N.S.) 19 (E.D.Ill.1928) both support his position. In *Macken v. Gass* the bankrupt husband fraudulently conveyed to his wife, along with their joint interests in bank accounts and a mortgage, "his interest in three parcels of real estate, the title having theretofore stood in their joint names . . . One of these parcels of real estate was the house in which the bankrupt and the defendant then lived and they still reside there." (23 F.Supp. at 321). After finding the transfers to be fraudulent, the court said, at page 322:

"There remains only the question of what relief shall be granted. Setting aside the transfers of the real estate would be of doubtful value. The interest that the bankrupt had in the joint bank accounts has been dissipated by withdrawals by

the defendant. The moneys secured by the mortgage have been paid in full. Equity will best be served by allowing a personal judgment against the defendant for the total of the claims which form the basis of this action, thus fitting the relief to the circumstances. *Baily v. Hornthal*, 154 N.Y. 648, 49 N.E. 56, 61 Am.St.Rep. 645."

In *Morris v. Flenner, supra*, the bankrupt had made a constructively fraudulent conveyance of a farm to one Behler who had paid only $300. The equity in the farm was worth almost $7,000. The bankrupt's wife had joined in the conveyance in order to release her inchoate right of dower. On the issue of whether the wife's inchoate right of dower should reattach to the property, the court said, at page 213:

"The defendant contends that the inchoate right of dower of bankrupt's wife should, in determining the value of the equity, be considered a lien upon the land. This might be true if the property were to be reconveyed to the bankrupt, but a court of equity does not require a useless thing. . . . The wife of the bankrupt has voluntarily, for a consideration that was satisfactory to her, released her inchoate right of dower."

Should these two cases be dispositive of the remedy to be granted in the case at bar? In *Macken v. Gass, supra*, the bankrupt and his wife had fraudulently transferred to her their joint interests in bank accounts, a mortgage and three parcels of real estate. The court found that "the joint bank accounts had been dissipated by withdrawals by the defendant. The moneys secured by the mortgage have been paid in full." She had the benefit of these other assets of the bankrupt which it could not order her to return. All she had left were the three parcels of real estate which had stood in their joint names. Because of this, the court said: "Equity will best be served by allowing a personal 'judgment against her for the total of claims . . .'" In that case, the *status quo ante* could not be restored.

In *Morris v. Flenner, supra*, the husband had conveyed the farm to a third party who had paid inadequate consideration for it. His wife had joined in the deed to release her inchoate. dower rights and the court refused to reimpose them on the property on the ground that she had "voluntarily, for a consideration that was satisfactory to her," released them. In the case at bar, Tina never released her rights to a third party as did the defendant in *Morris v. Flenner*.

Let us examine what was transferred from the bankrupt to his wife and what is to be preserved for the benefit of the estate in the case at bar. All Russo could transfer to his wife is what he had and that was his interest in the tenancy by the entirety which he shared with her. He never had a one-half interest in the property and thus could not have conveyed it to her. Before October 19, 1973, he was seised of the entirety *per tout et non per my* and after transferring his interest in that estate to Tina, he had no interest in the property and she was seised of the entire fee. The transfer did not consist of the conveyance of a "half interest" and thus there can be no basis for ordering such an interest to be conveyed to the trustee.

In *Cardon v. Harper*, 106 Utah 560, 151 P.2d 99, 56 Am.B.R. (N.S.) 651 (1944), a case closer on its facts to the case at bar, the court reached a different conclusion as to the remedy to be granted than did the courts in *Macken v. Gass* and *Morris v. Flenner, supra*. In that case, the trustee in bankruptcy was successful in voiding the conveyance of certain realty and personalty from the bankrupt to his wife as being in fraud of creditors. The Utah Supreme Court affirmed the lower court in all respects except one. The lower court had decreed that "the whole" of the property transferred from the bankrupt to the wife was to be vested in the trustee. 56 Am. B.R. (N.S.) at 658. The court modified this language "so as to vest in the trustee, for the purpose of being administered by him as a part of the bankrupt's estate, all right, title and interest *of the bankrupt* therein. The parties should be left in the same posi-

tion as if the fraudulent transactions had not taken place." 56 Am.B.R. (N.S.) at 659, 151 P.2d at 103 (emphasis added). The reason for the modification was that:

"Taken literally, the decree as it now stands in effect operates to divest the wife of the bankrupt . . . of her contingent one-third interest in the land which she acquired by operation of law, ownership of which had nothing whatsoever to do with the fraud. The decree could properly operate only to rescind the transfer of *whatever title the husband conveyed to his wife.* Without relinquishment on her part of her interest, the trustee in bankruptcy, like the purchaser at an execution sale, could acquire *only the title and interest which the husband had the legal right to convey.*"

*Id.* (emphasis added).

In *Cardon,* unlike in *Morris v. Flenner,* real property was conveyed from the bankrupt to his wife. Her inchoate right of dower never belonged to the bankrupt, and thus could not pass to the trustee and become a part of the bankrupt's estate. In a similar fashion, Russo was never seised of Tina's interest in the tenancy by the entirety. Thus, her interest therein cannot become a part of the bankrupt estate regardless of whether the trustee elects to avoid or preserve the fraudulent conveyance.

The trustee correctly contends that the tenancy by the entirety was destroyed by the fact that both Russos joined in the 1973 conveyance. Nonetheless, the value of what Tina, in essence, conveyed to herself on October 19, 1973 by joining in the conveyance with Russo, is not reachable by the trustee. Although a defendant in the instant proceeding, Tina is not the bankrupt herein, and no creditors of Tina can be represented by the trustee. It cannot be said that she "fraudulently conveyed" her interest in the tenancy by the entirety to herself, and, indeed, no such argument is made by the trustee. The trustee can only seek to administer, as part of the bankrupt estate, the transfer found to be fraudulent under state law. That transfer consisted of what the bankrupt conveyed to Tina; i. e. his interest in the tenancy by the entirety.

In the recent case of *Orbach v. Pappa,* 79 Civ. 1922, decided on October 29, 1979, District Judge Leonard B. Sand of the Southern District of New York reached the same conclusion. He found that the conveyance by the bankrupt in that case of his interest in a tenancy by the entirety to his wife "was fraudulent, and that the transfer was thus null and void as against the Trustee in Bankruptcy. However, the Court rejects the Trustee's claim that the attempted transfer transforms the ownership of said property from a tenancy by the entirety to a tenancy in common or joint tenancy. Consequently, the Trustee is limited to the relief available to a creditor against a debtor's interest in property held by the entirety."

Because of our rejection of the trustee's reasons for preserving the fraudulent conveyance in the hands of the transferee, there is no cause for the court to exercise its discretionary power as set forth in Section 70e(2) to grant the preservation remedy. The tenancy by the entirety should be restored and the defendant Tina Russo is ordered to reconvey the Romer Road property to Lucio Russo and Tina Russo.

One final matter remains. The Russos contend that New York's $10,000 homestead exemption applies to the property in question. They rely on the 1977 amendment to Section 5206 of the Civil Practice Law and Rules which, *inter alia,* raised the homestead exemption from $2,000 to $10,000, and eliminated the requirement that the property be designated as a homestead. Section 2 of the law amending § 5206 (L.1977 c. 181 § 2) states that: "This act shall take effect ninety days after it shall have become a law, *but shall not affect the application of property to the satisfaction of a money judgment for a debt contracted for before it takes effect.*" (emphasis mine) The amendment took effect on August 22, 1977. As the bankrupt's debt to Gross was incurred long before this amendment took effect, it is not subject thereto.

Furthermore, the Russos are not entitled to the $2,000 homestead exemption provided for in former Section 5206 because they never designated the property at 82 Romer Road as a homestead, as that statute required. Neither the deed of October 5, 1956 (Plaintiff's Exhibit 1), nor the deed of October 19, 1973 (Plaintiff's Exhibit 4) contains language designating the property as a homestead. The Russos are not entitled to the homestead exemption.

Submit judgment in conformity herewith.